Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Appellee,

v.

BEL–LOC DINER, INC; William Doxanas, Individually and as an officer of the Corporation, Appellants.

No. 85–1081.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1985.

Decided Dec. 18, 1985.

Frances E. Kanterman (Jeffrey Rockman; Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellants.

Barbara E. Kahl (Francis X. Lilly, Sol. of Labor, Monica Gallagher, Acting Associate Sol., Linda Jan S. Pack, Washington, D.C., for appellate litigation, U.S. Dept. of Labor on brief), for appellee.

Before PHILLIPS and SNEEDEN, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

This appeal arises from a judgment against appellant-employers for minimum wage, overtime, and recordkeeping violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (hereinafter FLSA). The court enjoined the appellants from further FLSA violations and from withholding back wages owed to ninety-eight employees. The appellants challenge the court's conclusion that because employees failed to receive thirty minute noncompensable break time, they must be compensated for eight hour rather than seven and one-half hour days. In addition, the appellants contest the lower court's grant of liquidated damages and the court's application of the three year, rather than the two year, statute of limitations for back wages liability under the FLSA. We affirm.

I

The Secretary of Labor initiated this action in 1979, alleging that defendants Bel-Loc Diner, Inc. and William Doxanas, Jr., individually and as an officer of the corporate defendant had failed to pay minimum wages and overtime and had neglected to maintain records as required by FLSA, from May 1976 to the date of the complaint's filing.

Bel-Loc, a twenty-four hour diner, operates on "day," "twilight," and "night" shifts. Doxanas manages the diner, which is staffed by waitresses and kitchen employees. Bel-Loc kept no records of specific hours worked by employees. Rather, Bel-Loc compensated employees on the assumption that if the employee worked, he or she worked the regular eight hour shift minus an unpaid thirty minute "meal break."

The court heard a wealth of evidence regarding the break habits of Bel-Loc's employees. Bel-Loc presented as witnesses eight employees, the manager of waitresses, and Doxanas. The Secretary produced twenty-two witnesses and three compliance officers. After hearing the evidence, the district court concluded that while night shift employees enjoyed uninterrupted half hour breaks, day and twilight shift workers did not receive such bona fide noncompensable breaks.[1] Accordingly, the court held that the day and twilight employees should be considered to have worked eight hour, rather than seven and one-half hour, days.

Based on these and other findings, the court held that Bel-Loc's employees received wages below the statutory minimum, and that Bel-Loc also committed overtime and recordkeeping violations. The district court also determined that Bel-Loc's conduct was "willful" for purposes of the FLSA three year statute of limitations for back wages, 29 U.S.C. § 255. Finally, the court awarded liquidated damages in an equal amount to the $43,660.15 of back wages, as Bel-Loc had failed to carry the burden of proof on a proffered good faith defense under 29 U.S.C. § 260.

This appeal followed, challenging all of the above rulings except those related to the overtime and recordkeeping violations.

II

■ We deal first with the appellants' contention that the court's finding of fact that day and twilight shift employees did

1. To qualify as a bona fide noncompensable break, the respite must be uninterrupted and at least thirty minutes in duration, and the employee must be completely relieved from duty. See 29 C.F.R. § 785.19.

not receive thirty minute noncompensable break times was clearly erroneous. We disagree. The district court held that minimum wage violations were established by testimony establishing a "pattern or practice" of employees' failure to take bona fide meal periods under the proof scheme prescribed in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Under *Mt. Clemens,* the Secretary need only produce sufficient evidence to show the amount and extent of the work improperly compensated for "as a matter of just and reasonable inference." 328 U.S. at 687. The burden then shifts to the employer to rebut the prima facie case by coming forward "with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn" from the Secretary's evidence. 328 U.S. at 687, 66 S.Ct. at 1192. Measuring the testimony against this standard, we could not hold the lower court's finding of a pattern of failure to take noncompensable breaks clearly erroneous.

■ Bel-Loc contends that the Secretary failed to make a *Mt. Clemens* prima facie showing upon a number of grounds. We find none persuasive. First, the contention that no evidence was introduced regarding the break habits of nontestifying employees lacks merit. There is no requirement that to establish a *Mt. Clemens* pattern or practice, testimony must refer to all nontestifying employees. Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens.* Furthermore, the record reveals that some testifying employees did, in fact, testify to the habits of other non-testifying employees.

■ Bel-Loc's second assertion, that the Secretary was obliged to present testimony from each shift of the entire back pay period from August 1976 through February 1981 to establish the requisite pattern, is equally groundless. The law makes no

such requirement. Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees.[2] *See, e.g., Donovan v. Burger King Corp.,* 672 F.2d 221, 224 (1st Cir.1982). The requirement is only that the testimony be fairly representational. The district court properly considered that requirement met.

Also meritless is Bel-Loc's contention that the inconsistency of the alleged evidence of pattern or practice makes the court's factual determination clearly erroneous. The evidence as a whole clearly suffices to establish the existence of a pattern or practice, at least as a "just and reasonable inference." Though some employees testified that they received thirty minute breaks, that testimony pales in comparison to the much more extensive testimony that the pattern of conduct was to the contrary.

Neither can we hold clearly erroneous the district court's determination that Bel-Loc neither negated the reasonableness of the inference nor came forward with evidence of the precise work performed to rebut it. Both in volume and content, the evidence as to precise work performed actually preponderated against Bel-Loc. While, again, there was some evidence tending to show that some employees may not have been victims of the general pattern that was established prima facie, it clearly did not constitute the sort of evidence of precise work performed which, under the *Mt. Clemens* proof scheme would suffice, much less compel, a determination that the prima facie case had been effectively negated or rebutted.

### III

We also reject appellants' contention that the court's findings of fact as to the amount of back wages owed to certain employees was clearly erroneous. Bel-Loc's attack rests upon three grounds: (1)

2. The case law clearly holds that the Secretary can rely on the testimony of representative employees as prima facie proof of a pattern or practice. *See, e.g., Brennan v. General Motors Acceptance Corp.,* 482 F.2d 825, 829 (5th Cir. 1973).

that based upon their own testimony, seven employees received proper meal breaks and were not entitled to back wages; (2) that based upon the lack of evidence as to which shift eleven employees worked, those eleven were not entitled to back wages, and (3) that based upon their testimony as to their own peculiar schedules or wages, the awards to certain employees was miscalculated or not justified in any amount. Our review of the evidence, however, reveals no basis for a finding of clear error in the lower court's back wages calculations as to these particular awards.

## IV

We turn next to the defendants' claim that the court erred as a matter of law in holding that Bel-Loc's violations were "willful" as the basis for setting the period for which back pay awards were to be made. Under the Portal-to-Portal Act, a finding of "willful" violation subjects the employer to a three year, rather than a two year, statute of limitations for back wages liability. 29 U.S.C. § 255. The appellants argue that the district court erred in its determination of willfulness by refusing to apply the standard recently established in *Trans World Airlines, Inc. v. Thurston*, — U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

The district court applied the traditional, pre-*TWA* definition of willfulness under 29 U.S.C. § 255(a), the statute of limitations provision applicable to both FLSA and the Age Discrimination in Employment Act (ADEA). Under this definition, a violation was willful if the employer knew that the FLSA or the ADEA was "in the picture" and, thus, might govern the employer's conduct. *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.1972); approved by this court in *Brennan v. Air Terminal Parking of Columbia, Inc.*, 21 WH Cases 475 (D.S.C.1973), *aff'd without pub. op.*, 498 F.2d 1397 (4th Cir.1974).

Unlike *Jiffy June*, which construed willfulness under the statute of limitations provision, *TWA* involved the interpretation of § 7(b) of the ADEA, which permits the award of liquidated damages to the prevailing plaintiff "only in cases of willful violations." 29 U.S.C. § 626(b). The Court in *TWA* expressly rejected, for liquidated damages purposes, the *Jiffy June* "in the picture" analysis in favor of a more stringent willfulness standard: whether the employer knew or showed reckless disregard for whether the ADEA prohibited its conduct.

■ We hold that *TWA*'s more stringent willfulness definition does not apply as well to the statute of limitations provision of § 255(a). We think this differentiating interpretation is consistent with the quite different purposes intended to be served by the limitations and liquidated damage provisions: the latter to punish, the former merely to extend the period of restitutionary recovery of back wages wrongly withheld. To reflect those different purposes, the willfulness standard under the statute of limitations should be less stringent than that applied under its quasi-criminal liquidated damages counterpart. The Supreme Court in *TWA* seems to have recognized the basis for such a distinction, though the specific question was not before the Court, in its observation that "even if the 'in the picture' standard were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages." — U.S. at ——, 105 S.Ct. at 625.

■ Accordingly, we affirm the lower court's application of the *Jiffy June* standard to the FLSA limitations provision. Under this standard, there can be no doubt that Bel-Loc's violations were willful, as two prior Labor Department investigations had put Bel-Loc on actual notice of the FLSA provisions.

## V

Finally, we find no error in the district court's determination that Bel-Loc failed to carry its burden of proof on the Portal-to-Portal Act defense, and, accordingly, we affirm the lower court's award of liquidated damages.

Unlike the ADEA's discretionary grant of liquidated damages for willful statutory violations, the FLSA provides for mandatory liquidated damages.[3] Section 11 of the Portal-to-Portal Act, however, provides a defense to such an award if the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA. 29 U.S.C. § 260. The employer has the burden of proof on this defense. *Richard v. Marriott Corp.,* 549 F.2d 303 (4th Cir.1977).

■ Before this action was brought against it, Bel-Loc had engaged in numerous discussions with the Labor Department investigators and in response to their suggestions had initiated some changes. For instance, Bel-Loc promulgated a policy implementing the Department's stance on meal breaks and also hired an accountant and an attorney to ensure compliance with minimum wage requirements. Nonetheless, the court below found that, in truth, Bel-Loc paid little more than lip service to the FLSA requirements. The diner made no attempt to ensure that the meal policy was enforced. Doxanas himself admitted that he did not know if the employees followed the policy and that it was likely that the waitresses' breaks continued to be interrupted by the demands of customers.

Furthermore, Bel-Loc followed the suggestions of its attorney and accountant and chose deliberately to disregard the contrary advice of the Labor Department. In *Mayhew, Inc. v. Wirtz,* 413 F.2d 658 (4th Cir. 1969), we noted that following the most favorable advice, in the face of obvious conflict, does not constitute good faith. In light of these considerations, the court below did not abuse its discretion in refusing to mitigate liquidated damages under 29 U.S.C. § 260.

AFFIRMED.

---

**3.** 29 U.S.C. § 216(b) provides that whenever the employer is liable to employees for unpaid minimum wages or unpaid overtime compensation, an additional equal amount of liquidated damages must also be awarded.