**Jack L. PFORR; Timothy L. Belcher, Plaintiffs–Appellees,**

**and**

**Jerry S. Davis; James O. Slice, Plaintiffs,**

**v.**

**FOOD LION, INC., Defendant–Appellant.**

No. 87–2547.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 4, 1987.

Decided June 20, 1988.

David Raymond Simonsen, Jr. (McGuire, Woods, Battle & Booth, Richmond, Va., on brief), for defendant-appellant.

Fred Dempsey Smith, Jr. (Minor & Smith, Richmond, Va., on brief), for plaintiffs-appellees.

Before WIDENER, CHAPMAN and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

This case involves a claim for compensation for alleged uncompensated overtime ("off-the-clock") hours. It stems from circumstances similar to those in this court's opinion of *Davis v. Food Lion*, 792 F.2d 1274 (4th Cir.1986). The present plaintiff, Pforr, along with Jerry Davis and James Slice, brought an action for unpaid overtime compensation. The district court severed the Davis claim and it was tried resulting in a verdict for the defendant. On appeal, this court affirmed. *Davis v. Food Lion, supra.* Pforr's case was then consolidated with that of Timothy Belcher, who had brought a similar suit. The consolidated cases were tried without a jury on December 18 and 19, 1986. The trial court found for the plaintiffs, stating, *inter alia,* that once it is ascertained that the employer has violated the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201–219 (1982 & Supp. III 1985), the employee must produce sufficient evidence to show the amount and extent of his work as a matter

of "just and reasonable inference" to prove entitlement to lost wages.

Food Lion appeals, arguing that the district court erred in its definition of the plaintiffs' burden of proof, in its application of the three-year statute of limitations under Portal-to-Portal Act § 6(b), 29 U.S.C. § 255, and in its findings of the amount of plaintiffs' uncompensated hours. We reverse and remand.

I

Pforr and Belcher were full-time clerks in the perishables department of defendant Food Lion, Inc. The instant controversy relates primarily to their work in its Martinsville, Virginia store (Store 96). Jack Pforr was employed as a clerk from June 26, 1978 until August 20, 1983, when he voluntarily quit his employment. Timothy Belcher was employed as a clerk from May 7, 1979 until June 14, 1985, when he voluntarily quit his employment. As full-time clerks, the plaintiffs were normally scheduled to work 44 hours per week. Plaintiffs were employed at the average hourly wage of $6.45 per hour and received one and one-half times that rate for overtime. Food Lion's area perishables supervisors authorized full-time perishables clerks to work additional overtime hours as needed.

Food Lion has a stated policy that no employee is to work off-the-clock hours. The policy appears in the employees' handbook and is further disseminated by periodic memoranda to each employee and requires the signature of the employee to certify that he is aware of the policy and that he has not violated it. Despite the stated policy, there was testimony as to the existence and extent of off-the-clock work. Additionally, Pforr and Belcher testified that neither had signed the periodic memoranda.

The 44–hour-per-week allotment is part of Food Lion's "effective scheduling" system, wherein Food Lion corporate supervisors allocate hours to the stores based upon what such supervisors perceive as the necessary time to perform the various tasks. As noted in *Davis, supra*, "[T]he system utilizes a formula to determine the number of variable hours to be allowed individual markets based upon the quantity of products being processed, wrapped, and stocked." 792 F.2d at 1276. The testimony of the witnesses generally indicates two things. First, plaintiffs, department managers, and store managers knew of Food Lion's general policy prohibiting off-the-clock work. Second, all seemed to concede that to meet "effective scheduling," some off-the-clock work was required. There is conflicting testimony as to the extent of the knowledge of department and store supervisors as to plaintiffs' off-the-clock work. Randy Cox, Belcher's perishables manager, testified that he had caught Belcher working off the clock on one occasion and had directed him to leave. Craig Reavis, a Food Lion store manager from February 1982 to January 1983, testified that during the time Pforr worked under him, he had caught Pforr working off-the-clock on one occasion and had instructed Pforr to leave. The district court noted testimony by two of defendant's witnesses, Reavis and James Caldwell, that each was aware of a separate incident when Pforr worked off-the-clock. Upon discovery of isolated instances of plaintiffs working off-the-clock, they were told to stop work or to leave immediately.

The trial court found that the store manager and the department manager knew of this practice of working off-the-clock. Based on isolated instances detailed in the testimony, the court found that these managers were specifically aware of plaintiffs working off-the-clock. Defendant, in its proposed finding of facts, stated, "I have no doubt that Plaintiffs actually worked some hours 'off-the-clock.' Furthermore, I have no doubt that Food Lion knew or should have known about some of the off-the-clock' hours." The trial court found from the evidence and this concession that Food Lion had knowledge that plaintiffs were working off-the-clock.

Plaintiffs introduced Exhibits 4 and 7, which are estimates of their off-the-clock time. Pforr reconstructed his off-the-clock work for the period January 1981 through March 1983 as 636 hours. Defendant chal-

lenges Exhibit 4 as inaccurate. In Plaintiffs' Exhibit 7, also challenged as inaccurate by defendant, Belcher estimated his off-the-clock time for the period of August 1981 through August 1984 at a total of 937 hours. Belcher testified that on Mondays he would work 5 to 6 hours off-the-clock and that he worked all of his Saturday time off-the-clock. He stated that he would also work 3 hours off-the-clock on "truck days," of which there were three per week.

The trial court recognized certain inconsistencies among the exhibits, the testimony, and the pretrial depositions. The exhibits had been prepared shortly before trial. The court stated, however, that plaintiffs did not know that it was necessary to keep track of the off-the-clock time and therefore could not be faulted for these inaccuracies. Insofar as there were inconsistencies, the district court reduced the hours claimed to those amounts unrebutted by defendant and it gave defendant full credit for errors and inconsistencies in plaintiffs' exhibits. The court determined that Pforr's unpaid overtime hours amounted to 550 and that Belcher's were 800. Based upon their overtime wage rate, the court found that Pforr was entitled to additional wages of $5,225 and that Belcher was entitled to $7,168. The basis for this decision, as noted by the district court, was the reasonable inference that may be drawn from the evidence of the number of off-the-clock hours, and taking into account the finding that the defendant corporation had constructive or actual knowledge of the off-the-clock practice.

The district court also awarded liquidated damages in an amount equal to plaintiffs' unpaid wages. Liquidated damages are provided under the FLSA, 29 U.S.C. § 216(b). However, under the Portal-to-Portal Act of 1947, at 29 U.S.C. § 260 (1982), if the court finds the employer to have acted in good faith or that he had reasonable grounds to believe his act or omission did not violate the FLSA, the court may award no liquidated damages or award any amount thereof not to exceed the amount specified in § 216. The district judge found that when seeking relief from liquidated damages, the burden shifts to the employer to persuade the court that it was acting in good faith and upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory amount. Based upon its finding that the lower-level management had knowledge of the practice of off-the-clock work, particularly that performed by plaintiffs, the court found that liquidated damages were appropriate. He noted, "It would certainly be illogical for the court to find that Food Lion knew of the violation of the FLSA and at the same time was acting in good faith." The district court also found that the plaintiffs were entitled to reasonable attorneys' fees.

The district court also found that Food Lion knew the FLSA was applicable (i.e., "in the picture") with respect to off-the-clock hours. Under the Portal-to-Portal Act, a finding of "willful" FLSA violation subjects an employer to liability under a three-year, rather than the general two-year, statute of limitations for back wages. The court made its award to plaintiffs for three years of back wages and used the "in the picture" definition of "willful" as found in Donovan v. Bel–Loc Diner, Inc., 780 F.2d 1113, 1117 (4th Cir.1985).

## II

Defendant argues that the district court erred in defining the plaintiffs' burden to prove the amount and extent of uncompensated off-the-clock hours that Food Lion "suffered" or "permitted" plaintiffs to work. The standard under Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), does not mandate that a plaintiff prove each hour of overtime work with unerring accuracy or certainty. In Donovan v. Bel–Loc Diner, Inc., supra, this court stated that a plaintiff under the FLSA need only show the amount and extent of improperly compensated work " 'as a matter of just and reasonable inference.' The burden then shifts to the employer to rebut the prima facie case by coming forward 'with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn' from the

[] evidence." *Id.* at 1116 (citations omitted).

We held in *Davis v. Food Lion, supra,* that employer knowledge, either actual or constructive, of uncompensated overtime work is required to prove a claim under FLSA § 7(a)(1), 29 U.S.C. § 207(a)(1). In that case, we stated:

> Under § 7(a)(1), however, a plaintiff must also show that he was "employed" by the defendant/employer in order to prove a violation. As defined in 29 U.S. C. § 203(g), " 'employ' includes to suffer or permit to work." The words "suffer" and "permit" as used in § 203(g) have been consistently interpreted to mean with the knowledge of the employer. Therefore, in order to prove that he is "employed" for purposes of the Act, it is necessary for plaintiff to show that his employer had knowledge, either actual or constructive, of his overtime work.

792 F.2d at 1276 (citations omitted). We explicitly stated that this burden is squarely upon the plaintiff; a defendant in § 7(a)(1) cases is not required to show lack of knowledge as an affirmative defense. *Id.* at 1277.

The district court found that defendant's managers had knowledge of plaintiffs' working off-the-clock. The court pointed to Tom Moore's testimony. Moore was a perishables manager who supervised both Pforr and Belcher. He testified that he was aware of three instances of off-the-clock work by Pforr (App. 73) and three or four instances by Belcher (App. 77), all of which were occasioned by requests of Moore. The district court also relied on testimony of defendant's witnesses Reavis and Caldwell, who stated they discovered plaintiffs working off-the-clock on a couple of occasions. The court found that such evidence did not contradict plaintiffs' evidence, and that plaintiffs did work uncompensated overtime with Food Lion's knowledge.

The district court, however, misconstrued our ruling in *Davis.* Although we held that employer knowledge of off-the-clock work is required under § 7(a)(1), this requirement must be read in conjunction with the express language of the statute. Reavis and Caldwell both testified that when they discovered plaintiffs working off-the-clock they instructed them to stop. Knowledge of the off-the-clock practice, required by *Davis,* must be read together with the language of the statute: "suffer" or "permit" to work. Based upon the few instances of the employer's permission or acquiescence, the trial court found that plaintiffs had worked a combined 1350 hours off-the-clock.

We find that the trial court erred in basing its finding of such a large number of off-the-clock hours on such a few incidents of employer knowledge. It is not enough for a plaintiff to establish his employer's knowledge of a few incidents of off-the-clock work, and upon this claim of knowledge, submit a record of his three years of alleged off-the-clock work. A necessary part of plaintiffs' burden of proof at trial was to show Food Lion "suffered" or allowed them to work off-the-clock hours. Under *Mt. Clemens,* such proof may be made by proof of a pattern or practice of employer acquiescence in such work, but plaintiffs may not merely estimate off-the-clock hours worked without presenting at least a showing that defendant "suffered" that work.[1] This does not mean proof of each hour claimed, on each date, but plaintiff must show by actual knowledge or by a pattern and/or practice that the employer "suffered" or allowed the off-the-clock work claimed. This proof may be developed as a "just and reasonable inference" from the evidence. While Plaintiffs' Exhibits 4 and 7 are sufficient as estimates of plaintiffs' uncompensated overtime hours, they do not reflect any measure of proof of employer allowance of such work.

Therefore, as to the issue of how many hours were worked by plaintiffs with the

---

1. Belcher claimed all Saturday work was off-the-clock, that he worked 5 to 6 hours off-the-clock on Mondays and 3 hours every "truck day", which was 3 times per week. We can find no evidence that Food Lion was aware of, or suffered or allowed, such an extensive or continuous pattern or practice of off-the-clock work by Belcher or any other employee.

knowledge and consent of the defendant, we reverse and remand to the district court to require plaintiffs to prove that by a "just and reasonable inference" Food Lion permitted them to work their claimed off-the-clock hours.

### III

The second issue before this Court is whether the district court applied the appropriate statute of limitations. The district court held in part:

> The statute of limitations governing a claim for back wages under FLSA is governed by 29 U.S.C. § 255(a).... Defendant initially sought to restrict Plaintiffs' claims to two years, but has since recognized that the Fourth Circuit case of *Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113 (4th Cir.1985), adopted the "in the picture" test, and Defendant does not now contend that it did not know the FLSA was "in the picture".

The district court held that the three-year, rather than the two-year, statute of limitations was applicable and that plaintiffs could recover wages for three years prior to the dates Pforr and Belcher filed their actions. The court found that Food Lion knew the FLSA was "in the picture" and therefore its conduct was "willful" under *Bel–Loc,* mandating the longer statute of limitations.

At the time of the district court's decision and at the time of the argument of this appeal *Bel–Loc* was the law of this circuit on question of what was willful conduct by an employer in FLSA cases. The Supreme Court decided *McLaughlin v. Richland Shoe Co.,* —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), which overruled the "in the picture" definition of "willful" that we used in *Bel–Loc. Id.* —— U.S. at ——, 108 S.Ct. at 1681–83. The Court explained the legislative history of the two-year and three-year statutes of limitations and stated:

> The fact that Congress did not simply extend the limitations period to three

years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations. It is equally obvious to us that the *Jiffy June* standard of willfulness—a standard that merely requires that an employer know that the FLSA "was in the picture"—virtually obliterates any distinction between willful and nonwillful violations. As we said in *Trans World Airlines, Inc. v. Thurston, supra,* at 128, "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability." Under the *Jiffy June* standard, the normal 2-year statute of limitations would seem to apply only to ignorant employers, surely not the state of affairs intended by Congress.

> The common usage of the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." *See* Roget's International Thesaurus § 622.7, p. 479; § 653.9, p. 501 (4th ed. 1977). The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston* —that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act.[2]

—— U.S. at ——, 108 S.Ct. at 1681 (footnote omitted).

The district court in deciding to apply the three-year statute used the circuit precedent applicable at the time, but this precedent has now been overruled. We reverse and remand to the district court for further proceedings consistent herewith.

**REVERSED AND REMANDED.**

---

**2.** The citations of the cases referenced in the quote are *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139 (5th Cir.1971), *cert. denied,* 409 U.S. 948 (1972), and *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).