Dorothy Jean LAMPLEY, Plaintiff,

v.

BIG DISCOUNT FOOD STORE, INC.,
d/b/a Joe's Fine Foods and Joe's
Shoprite, Defendant.

Civ. No. C–86–148–WS.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

June 24, 1988.

Robert M. Elliot, Winston–Salem, N.C., for plaintiff.

William A. Blancato, Gray Robinson, Winston–Salem, N.C., for defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

At the trial of this case on April 11, 1988, Plaintiff pursued claims against the Defendant for alleged violation of the Fair Labor Standards Act for failure to pay her for hours worked in a work week in excess of forty (40) at a rate not less than one and one-half (1½) times her regular rate, 29 U.S.C. § 207(a)(1), and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3, as a result of her filing a charge with the Equal Employment Opportunity Commission. The Fair Labor Standards Act claim was tried to a jury, which returned a verdict on the issues submitted as follows:

1. Did the Defendant fail to pay the Plaintiff overtime compensation as required by law?

<u>YES</u>

(Yes or No)

(If "Yes," go to Issue No. 2; if "No," stop here and do not go on to any other issue.)

2. Was the Defendant's failure to pay the Plaintiff the required overtime compensation a willful violation of the Fair Labor Standards Act?

YES

(Yes or No)

(If "Yes," calculate damages beginning February 21, 1983; if "No," calculate damages beginning February 21, 1984. Go on to Issue No. 3.)

3. What amount of damages, if any, is the Plaintiff entitled to recover?

$ 6,500.00

(Amount)

Upon the finding by the jury that the Defendant failed to pay the Plaintiff the required overtime compensation, the court will award the Plaintiff liquidated damages in an amount equal to the jury verdict of $6,500.00. Under 29 U.S.C. § 216(b), an award of liquidated damages is mandatory unless the employer proves that he acted in good faith and with reasonable grounds for believing he was not in violation of the FLSA. 29 U.S.C. § 260; *Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir.1985); *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir.), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977). Since the court finds that Defendant's president admitted he knew the requirements of the Fair Labor Standards Act and also knew his pay arrangement with the Plaintiff was in violation of that Act, the court declines to reduce the liquidated damage award.

■ As the prevailing party, Plaintiff is also entitled to recover her reasonable attorney's fees and costs. 29 U.S.C. § 216(b). Although pre-judgment interest was not prayed for in the Plaintiff's complaint, Plaintiff's counsel raised this issue during the trial. The court holds that prejudgment interest is unnecessary in this case because liquidated damages "compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982) (citing *Overnight Motor Co. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1223, 86 L.Ed. 1682 [1942]).

Upon the discharge of the jury, the court permitted the parties to present any additional evidence that they considered relevant on Plaintiff's Title VII claim, which was tried to the court. Both parties presented additional evidence. Based upon the evidence presented at trial, the exhibits, and the stipulations of the parties, and upon the court's assessment of the credibility of the witnesses and the weight of the evidence, the court makes the following findings of fact.

## FINDINGS OF FACT

1. Plaintiff is a forty-three-year-old female and was employed by the Defendant from 1980 until April 1985.

2. Defendant is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in Winston–Salem, North Carolina. During the time period pertinent to this action the Defendant was engaged in the retail grocery business and operated three stores in Winston–Salem. Joe W. Choplin is the president and primary shareholder of the Defendant corporation. The Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964.

3. Until April 1985 Plaintiff was employed as the meat market manager at the Defendant's Bowen Boulevard store. Her rate of pay was $8.00 an hour. She earned approximately $16,000.00 a year for her straight-time work. On April 20, 1985, Keith Choplin, the store manager and son of Joe W. Choplin, Defendant's president, advised Plaintiff that she was going to be transferred to Defendant's South Main Street store to replace an employee who had taken a leave of absence. Plaintiff would work for the meat market manager at that store, Sam Van Hoy. Plaintiff was told to report on Monday, April 22, 1985.

4. Upon being advised of the transfer, Plaintiff became very upset, began crying, and took the afternoon off.

5. Plaintiff reported as scheduled at the South Main Street store on April 22, telling the meat market manager, Sam Van Hoy, upon arrival that, "You don't like me and Bill Choplin don't and I won't be here long." During the morning her work performance and attitude were bad, and she was obviously upset. She did not return after lunch, and her husband called Van Hoy and told him that he had taken her to the doctor. Van Hoy told Joe Choplin of his experience with Plaintiff that morning.

6. Plaintiff went to the doctor on Monday afternoon, April 22, 1985, explained that she was upset about the transfer, and received medication. Her doctor wrote a note for her husband to take to the South Main Street store. Plaintiff's husband later called Joe Choplin and advised him that Plaintiff would be out for two weeks because of her anxiety and nerves.

7. At the beginning of Plaintiff's two-week absence, Defendant temporarily transferred a woman from its office to assist Van Hoy in the meat market.

8. On Wednesday, April 24, 1985, Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that she had been demoted and transferred because of her sex and age. Joe Choplin received a copy of the charge in the mail from the EEOC three or four days later.

9. On Saturday, May 4, 1985, before Plaintiff was scheduled to return to work on May 6, she called Joe Choplin at work and told him that she wanted to talk to him. Choplin advised her that he was working at a produce sale in the Patterson Street store parking lot all day and that he could not talk to her then, but perhaps could talk to her in the late afternoon.

10. The Plaintiff drove to the store in the late afternoon and Choplin walked over to her car to talk to her. Plaintiff advised Choplin that she had heard from a neighbor that she no longer had a job. Choplin said that before she returned to work they were "going to have to have 'a long word of prayer'" because other things had developed since she had been out sick; that they would have to have a "good understanding" before she went back to work.

Plaintiff asked what he meant, and Choplin replied that he meant she went to the EEOC, that she had no right to go to the EEOC and file a complaint, and that she had no reason to do that. He said that since she had filed a complaint he was not going to put her back to work just because she was ready to go back. He said that he could not talk to her further that night because his family was waiting for him to come home to go to the races.

11. Choplin testified that he was upset when he received a copy of Plaintiff's EEOC complaint, and expressed his displeasure to others. He said that he thought her complaint to the EEOC "was a lie," and that if she pursued her claim "she was a liar, and I don't want a liar working for me."

12. After Plaintiff's discussion with Choplin in the parking lot on May 4, she had no further discussions with him and did not report to work on May 6. Plaintiff called Choplin two or three times on the telephone, but could not get him to come to the telephone. Based on Choplin's statements on Saturday, his failure to give her a time to report on Monday, and his failure to answer or return her calls, Plaintiff understood that she was discharged.

13. But for Plaintiff's filing of the EEOC charge, she would have been allowed to return to work as scheduled on May 6 without any restrictions. Choplin's actions on May 4 and his failure to meet with or talk to the Plaintiff, which was the minimum prerequisite for her return to work, were equivalent to a discharge.

14. Back pay is appropriate to restore the Plaintiff to the position she would have occupied were it not for the Defendant's unlawful discrimination. Reinstatement is also appropriate.

15. After May 6, 1985, Plaintiff sought other employment. She went to several grocery stores and meat markets seeking a position as a meat market manager, but was unsuccessful. She also went to the Employment Security Commission. She began drawing unemployment compensa-

tion in September 1985 for five or six months.

16. Plaintiff's only earnings during 1985 were the $5,788.00 she earned from the Defendant prior to her termination. Plaintiff was reasonably diligent in seeking equivalent work and was available for work during the remainder of that year. Plaintiff is entitled to back pay of $10,240.00 for 1985. (32 weeks at $320.00 per week [$8.00 an hour for 40 hours]).

17. Plaintiff's testimony concerning the times and places she sought work after May 6, 1985, was vague; she could not give any specific information about dates, places, and interviews. She did not apply at several large employers in her area, including Piedmont Airlines and Stroh's Brewery. Although she had worked as a cashier in her own meat market, and as a cashier for Joe Choplin in the 1970's, she did not apply for any cashier jobs.

18. During 1986 Plaintiff reported for tax purposes earning $1,588.00, although she testified that all her child care earnings were not reported. She worked five weeks as a temporary meat wrapper at Craven's Ham House, earning $5.00 an hour for a 40-hour week, or $1,000.00. She also kept her grandchildren in her home all year (except presumably the five weeks she was working at Craven's Ham House) and was paid $45.00 a week by her daughter. For two and one-half to three months she also kept another child for $25.00 a week. Her yearly earnings thus should have been approximately $3,325.00 ($1,000.00 plus $2,025.00 [45 weeks at $45.00 per week] plus $300.00 [12 weeks at $25.00 per week]).

19. By January 1986 it should have been apparent to Plaintiff that she should accept employment at the best job available, and it is reasonable to expect that with due diligence she could have obtained a job paying at least the minimum wage, $3.35 an hour, or $6,700.00 a year (50 weeks at $134.00 a week). This figure is more appropriate for determining Defendant's back pay liability than Plaintiff's actual earnings. For 1986 Plaintiff is entitled to back pay of $9,300.00 ($16,000.00 minus $6,700.00).

20. For the first six months of 1987 Plaintiff kept her grandchildren for $45.00 per week and earned approximately $1,125.00 (25 weeks at $45.00 per week). The last half of the year she took herself out of the job market and worked with her husband in remodeling a rental house they owned.

21. For the first six months of 1987, Plaintiff could have earned with reasonable diligence at least $3,350.00 by taking a job at $3.35 an hour; Defendant is entitled to this credit against the approximately $8,000.00 Plaintiff would have earned at her old job. Plaintiff is thus entitled to back pay of $4,650.00 for January through June of 1987 ($8,000.00 minus $3,350.00); she is not entitled to back pay for the last half of the year when she was not in the job market.

22. In March 1988 Plaintiff began working at Hanes earning $3.80 an hour and was making $4.00 an hour at the time of trial on April 11, 1988. With reasonable diligence she could have earned at least $3.35 an hour during January and February 1988. For 1988, until the time of trial, Plaintiff is entitled to back pay of $2,480.00, the difference between the $4,480.00 (14 weeks at $320.00 per week) she reasonably would have earned at her former job and her actual earnings at Hanes ($928.00; 4 weeks at $3.80 per hour plus 2 weeks at $4.00 per hour), as supplemented by the $1,072.00 she reasonably could have earned during the first two months of the year (8 weeks at $134.00 per week). From the time of trial until reinstated by the Defendant at her former wage rate, Plaintiff is entitled to the difference between her earnings at Hanes and $8.00 per hour.

23. There is insufficient evidence in the record for the court to make a determination of the value of any fringe benefits which Plaintiff lost as a result of her termination.

## DISCUSSION

Regarding Plaintiff's Title VII claim, the major question before the court

is whether a causal connection existed between Plaintiff's filing her EEOC charge and the limitation the employer placed on her return to work. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). It is uncontested that Choplin expressed his displeasure to others when he received a copy of Plaintiff's EEOC charge, and Plaintiff's testimony that she had heard from a neighbor that Choplin had said that she no longer had a job is credible under the circumstances. Choplin admitted that when he and Plaintiff talked in the parking lot on May 4 he told her she had no right to file an EEOC charge, that filing the charge was a significant development since she had been out sick, and that after she had filed with the EEOC he was not going to put her back just because she was ready to return to work, at least not before they had a "good understanding" and a "long word of prayer."

Although Choplin was vague about his specific intentions concerning Mrs. Lampley, his testimony at trial that if she pursued her claim "she was a liar, and I don't want a liar working for me," is indicative of his intent. Furthermore, Choplin never had the "long word of prayer" with Plaintiff, and failed to answer or return her telephone calls. After being told by Choplin that he was not going to put her back to work just because she was ready to return, Mrs. Lampley cannot be blamed for her failure to report on May 6.

The evidence, including Choplin's own testimony, persuades the court that but for Plaintiff's filing of the EEOC charge she would not have been limited in her return to work on May 6. While Defendant contends that Plaintiff's job attitude, admitted dissatisfaction with her transfer, and performance on April 22 were the reasons for any limitation placed on her return, the court is satisfied that the predominant reason was the Plaintiff's protected activity. *Ross*, 759 F.2d at 365–66.

■ Having found that Plaintiff was a victim of employment discrimination, the court must determine an appropriate remedy. The awarding of back pay in Title VII cases is governed by Section 706(g) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g). While discretionary with the court, back pay generally is appropriate to restore the Plaintiff to the position she would have occupied were it not for the unlawful discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). However, a plaintiff has a duty to mitigate damages which requires that the claimant be reasonably diligent in seeking equivalent employment. *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir.1985). The burden of proving failure to exercise such diligence is upon the employer. *Id.* at 1274. After searching for equivalent work for a reasonable period of time, a claimant must consider accepting suitable lower-paying employment in order to satisfy the duty to mitigate damages. *Id.* at 1275. Finally, in exercising discretion and attempting to make the Plaintiff whole, " 'unrealistic exactitude is not required' " and any uncertainties should be resolved against the discriminating employer. *Hairston v. McLean Trucking Co.*, 520 F.2d 226, 233 (4th Cir.1975) (quoting *Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1380 n. 53 [5th Cir.1974] ).

■ Although Plaintiff's testimony was vague concerning the dates and places where she sought work, she was initially justified in seeking an opening solely for a meat market manager. After a period of unemployment, however, Plaintiff was required to lower her sights and seek the best job available. The court is satisfied that the Plaintiff was reasonably diligent during the remainder of 1985 in seeking work comparable in both responsibility and wages to that which she previously performed for the Defendant. Therefore, the court believes that Defendant is responsible for back pay for thirty-two (32) weeks at $320.00 per week ($8.00 an hour) for the remainder of 1985, totaling $10,240.00. When added to the $5,788.00 Plaintiff earned from the Defendant during the first part of 1985, the sum is nearly equivalent

to her previous $16,000.00 annual earnings.[1]

■ During 1986 Plaintiff reported for tax purposes earnings of $1,588.00, although she testified that all her child care compensation, which would have earned her approximately $2,325.00, was not reported. However, her actual earnings would have been approximately $3,325.00. By 1986 it should have been apparent to the Plaintiff that she would have to accept employment at the best job available, and it is reasonable to expect Plaintiff, exercising due diligence, to have obtained a job paying at least $3.35 an hour, or approximately $6,700.00 per year. Thus the Defendant is responsible only for $9,300.00 in back pay for 1986.

■ The same is true for the first half of 1987; Defendant is responsible only for the difference between what Plaintiff would have earned at her former job, approximately $8,000.00, and what she could have earned at $3.35 an hour, approximately $3,350.00.[2] For the last half of 1987 Plaintiff took herself out of the job market by stopping her child care activities and devoting herself to remodeling a rental house; therefore the Defendant should not be responsible for back pay for the last half of 1987.

■ In 1988 the Plaintiff could have earned at least $3.35 an hour during January and February, before actually going to work at Hanes for $3.80 an hour in March. Defendant's liability for 1988 until the time of trial should be $2,480.00, the difference between the $4,480.00 she reasonably would have earned at her former job and her actual earnings at Hanes ($928.00), as supplemented by $1,072.00 she reasonably could have earned during the first two months of the year. Until reinstated by the Defendant at her former wage rate,

Plaintiff is entitled to the difference in her earnings at Hanes after the date of trial and her former wage rate of $8.00 per hour.

As a result of Defendant's discrimination and to make the Plaintiff whole for the reasonable results of that discrimination, the court will order that the Plaintiff be reinstated to her previous position of meat wrapper, from which she was terminated in May 1985, at her previous rate of pay of $8.00 per hour, together with all benefits. The issue of Plaintiff's demotion from manager to wrapper is not before the court; however, her hourly rate was not reduced at the time of her transfer.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter of this action.

2. The Plaintiff has established by a preponderance of the evidence that Defendant retaliated against her in violation of 42 U.S.C. § 2000e–3 for engaging in protected activity.

3. Plaintiff is entitled to recover from the Defendant THIRTEEN THOUSAND DOLLARS ($13,000.00) for the Defendant's violation of the Fair Labor Standards Act and TWENTY–SIX THOUSAND SIX HUNDRED SEVENTY DOLLARS ($26,-670.00) for the Defendant's retaliation against her in violation of 42 U.S.C. § 2000e–3. In addition, Plaintiff is entitled to recover a reasonable attorney's fee in an amount to be determined.

4. Plaintiff shall be reinstated to her prior position of meat wrapper, from which she was terminated in May 1985, at her previous rate of pay of $8.00 per hour, together with all benefits. From the time of trial until reinstated by the Defendant at

---

1. The Defendant is not entitled to a credit for the unemployment compensation received by the Plaintiff. *EEOC v. Ford Motor Co.,* 645 F.2d 183, 195–96 (4th Cir.1981), *rev'd on other grounds,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982).

2. Although the Plaintiff testified that she and her husband sold vacuum cleaners door-to-door

at night during the first part of 1987 and earned $3,300.00, the Defendant is not entitled to a credit for these "moonlighting" earnings because such work could have been performed even if the Plaintiff had remained employed by the Defendant. *Lilly v. City of Beckley, W.V.,* 797 F.2d 191, 196 (4th Cir.1986).

**218**

her former wage rate, Plaintiff is entitled to the difference between her earnings at Hanes and $8.00 per hour.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Plaintiff shall HAVE AND RECOVER of the Defendant the sum of THIRTEEN THOUSAND DOLLARS ($13,000.00) for willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 207(a)(1) and 216(b); Plaintiff shall also HAVE AND RECOVER of the Defendant her reasonable costs and attorney's fees pursuant to 29 U.S.C. § 216(b).

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall HAVE AND RECOVER of the Defendant the sum of TWENTY–SIX THOUSAND SIX HUNDRED SEVENTY DOLLARS ($26,670.00) as back pay until the time of trial as a result of retaliation in violation of 42 U.S.C. § 2000e–3. Plaintiff shall HAVE AND RECOVER of the Defendant the difference between Plaintiff's earnings at Hanes and $8.00 per hour from the time of trial until reinstated by the Defendant at her former wage rate. Plaintiff shall also HAVE AND RECOVER of the Defendant her reasonable costs and attorney's fees pursuant to 42 U.S.C. § 2000e–5(k).

IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall be REINSTATED to her former position of meat wrapper at her previous rate of pay of $8.00 per hour, together with all benefits.