Wayne TEW, Plaintiff,

v.

FOOD LION, INC., Defendant.

Belinda Faye LYLE, Plaintiff,

v.

FOOD LION, INC., Defendant.

Nos. 90–06–CIV–3–H, 90–07–CIV–3–H.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

Feb. 7, 1991.

James M. Johnson, Bryan, Jones, Johnson & Snow, Dunn, N.C., for plaintiffs.

David R. Simonsen, Jr., Richmond, Va., James R. Nance, Jr., Reid, Lewis, Deese & Nance, Fayetteville, N.C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MALCOLM J. HOWARD, District Judge.

This matter is before the court for findings of fact and conclusions of law after a bench trial held January 23–24, 1991, in Fayetteville, North Carolina. The plaintiffs brought these actions pursuant to section 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), alleging that they worked uncompensated overtime hours. Having heard the evidence presented at trial and having reviewed the exhibits thereto, the court now rules in favor of the plaintiff Wayne Tew in the amount of $44,550 and in favor of the plaintiff Belinda Faye Lyle in the amount of $8,802. The plaintiffs also are entitled to attorneys' fees and court costs pursuant to 29 U.S.C. § 216(b).

### A. FINDINGS OF FACT

1. Food Lion, Inc., is an enterprise engaged in commerce or in the production of goods for commerce as defined in the FLSA.

2. Every Food Lion Store has a meat department, also known as a meat market, offering meat products for sale to the public.

3. In the meat market of each store, Food Lion employs a full-time meat market manager.

4. The meat market manager is an hourly employee who manages the market on a daily basis. The meat market manager supervises meat cutters and meat wrappers, who also are hourly employees.

5. Each Food Lion Store has a store manager and one or more assistant store managers who are responsible for the overall operation of the store, including the meat market. The managers are salaried, not hourly, employees.

6. The plaintiff Wayne Tew was employed as the meat market manager of Food Lion Store 123 on Legion Road in Fayetteville, North Carolina, from August 13, 1987 to May 6, 1989.

7. The plaintiff Belinda Faye Lyle was employed as a meat wrapper in the Food Lion Store 123 on Legion Road in Fayetteville, North Carolina, from August 13, 1987 to May 6, 1989.

8. Food Lion has an elaborate Effective Scheduling system that forms the basis of an hourly employee's authorized hours every week. This system allows employees a set number of hours to complete certain duties. Tew and Lyle were unable to complete the tasks assigned to them in the time allowed by the Effective Scheduling system.

9. Food Lion's policy is to minimize the overtime hours of its market managers and other full-time market employees. All overtime hours are to be authorized in advance.

10. Food Lion requires all hourly employees to record their work hours on time cards by means of a punch time clock.

11. Food Lion pays hourly workers on the basis of the time worked as recorded on their time cards.

12. The plaintiffs knew that Food Lion would pay them only for the hours that they recorded on their time cards.

13. Food Lion published and enforced a corporate policy requiring employees to accurately record their time worked and prohibiting employees from working off-the-clock.

14. Employees who violated Food Lion's rule against working off-the-clock were subject to disciplinary action up to and including discharge.

15. The plaintiffs knew of Food Lion's rule against working off-the-clock.

16. The plaintiffs have been paid in full for all of their recorded hours worked for Food Lion.

17. Wayne Tew testified that he worked an average of 18 hours per week off-the-clock from August 13, 1987 to May 6, 1989. This work included one hour on Sundays, four hours on Mondays, two hours on Tuesdays, two hours on Thursdays, four hours on Fridays and five hours on Saturdays. Tew seeks recovery for only 15 hours a week. The court accepts Tew's testimony as credible and finds that he worked at least 15 hours a week off-the-clock from August 13, 1987 to May 6, 1989.

18. Tew's regular hourly wage was $11.00. His regular overtime wage was $16.50.

19. Belinda Faye Lyle testified that she worked an average of at least ten hours a week off-the-clock. Lyle seeks recovery for only six hours a week. The court accepts Lyle's testimony as credible and finds that she worked at least six hours a week off-the-clock for Food Lion from August 13, 1987 to May 6, 1989.

20. Lyle's regular hourly wage was $8.00 from February 1, 1989 to May 6, 1989. Her overtime wage during this period was $12.00 an hour. The only testimony of her wage before that time is "$5.00 to $6.00 an hour." The court must assume, therefore, that her wage from August 13, 1987 to January 31, 1989 was $5.00 an hour. Her overtime wage during this period was $7.50.

21. The plaintiffs worked these hours off-the-clock to complete the tasks assigned to them pursuant to the Effective Scheduling system. The plaintiffs reasonably felt it necessary to work off-the-clock to avoid disciplinary action for substandard performance.

22. Food Lion, through its store managers and assistant store managers, had actual or constructive knowledge of the plaintiffs' off-the-clock work.

23. Gerald Pone, the plaintiffs' store manager from August 1987 to March 1988 knew that the plaintiffs were working off-the-clock on a regular basis. Pone told plaintiff Tew, "Don't get caught," and he told plaintiff Lyle, "You are on your own if you get caught." He tried to keep the regional supervisor from knowing that his employees were working off-the-clock. He would instruct another employee to clock the plaintiffs in whenever he saw a regional supervisor entering the store. Pone gave the plaintiffs keys to the store so that they could let themselves in before regular store hours. When supervisors were scheduled to come into the store, he would call them at home so that they could come to work early to prepare for the supervisors. Pone made jokes about the working off-the-clock policy cards that the employees were required to sign.

24. Danny Smith was the store manager from March 1988 to August 1988, and he knew that the plaintiffs were working off-the-clock on a regular basis. Like Pone, he gave the plaintiffs keys to the store several times a month. He stated to plaintiff Tew, "If you get caught, I don't know a damn thing about it."

25. Terry Patterson was the store manager from September 1988 to May 1989, and he knew that the plaintiffs were working off-the-clock on a regular basis. He told plaintiff Tew, "Don't get caught—if you get caught, they will bust you." He also gave the plaintiffs keys to the store on several occasions.

26. Food Lion's violation of the FLSA was willful and not in good faith.

B. CONCLUSIONS OF LAW

1. This court has jurisdiction over the plaintiffs' claims for uncompensated overtime pursuant to 29 U.S.C. § 216(b).

2. Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1) provides that:

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

3. To recover, the plaintiffs must prove by a preponderance of the evidence that they worked overtime hours without compensation, the amount and extent of such work as a matter of just and reasonable inference, and that Food Lion knew of such work. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *Pforr v. Food Lion, Inc.*, 851 F.2d 106, 109 (4th Cir.1988); *Davis v. Food Lion, Inc.*, 792 F.2d 1274, 1276 (4th Cir.1986).

■ 4. The plaintiffs must establish the amount or number of uncompensated overtime hours that they worked without resort to guess or conjecture. *See George Lawley & Son Corp. v. South*, 140 F.2d 439, 441 (1st Cir.), *cert. denied*, 322 U.S. 746, 64 S.Ct. 1156, 88 L.Ed. 1578 (1944).

5. If an employer is found to have violated the FLSA's overtime pay provisions, it is liable in the amount of the proven unpaid overtime compensation plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The court, however, has discretion to award no liquidated damages or a smaller amount of liquidated damages if the employer has acted in good faith and had reasonable grounds for believing that it was not violating the FLSA. 29 U.S.C. § 260. Because the court has found that Food Lion did not act in good faith, it must award liquidated damages.

6. Because the court has found the violation to be willful, the applicable statute of limitations is three years. 29 U.S.C. § 255(a). *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

## C. DISCUSSION

■ This case hinges on a credibility determination. The plaintiffs testified that they regularly worked off-the-clock with the knowledge of Food Lion officials at the store level. These officials testified that they had no such knowledge and that it would have been impossible for the plaintiffs to have worked off-the-clock without their knowledge. The court believes the plaintiffs and not the store managers. The testimony of the plaintiffs was detailed and precise and was corroborated by other witnesses. They testified to many different occasions on which Food Lion officials knew they were working off-the-clock and they remembered specific comments made by Food Lion officials.

In contrast, the court did not find the testimony of the store managers to be credible. The court makes this determination based upon their demeanor on the witness stand and the substance of their testimony. This testimony amounted to broad denials that they had no knowledge that the plaintiffs had ever worked a single minute off-the-clock. Their recollection of the plaintiffs' working hours was refuted by the time cards of the plaintiffs which showed them clocking in on some mornings before 4:00. Their testimony seemed motivated in large part by fear of reprimand from Food Lion if they admitted having knowledge that the plaintiffs worked off-the-clock and did nothing to stop it.[1]

---

1. It is clear that from the regional level and upward, Food Lion stringently enforced its written policy against working off-the-clock, and the court believes that no one at the regional level or higher had knowledge of the plaintiffs doing so.

   Nevertheless, it is also clear that Food Lion has experienced widespread problems with employees working off-the-clock. This is evidenced by prior litigation involving Food Lion (albeit won by Food Lion) and was admitted to by Food Lion personnel at trial. The reason given by employees who claim to have worked off-the-clock is that Food Lion had assigned tasks to them that they could not complete in the time allotted. They felt it necessary to work

Food Lion points to a tape recording made by in-house investigator Tom Anderson in which the plaintiffs stated that Food Lion officials had no knowledge of their off-the-clock work. Tew contends that he lied to Anderson, and the court accepts his reasons for doing so as credible. Lyle contends that she told Anderson that managers knew that she was working off the clock but did not give him specific names. She contends that Anderson turned off the tape recorder during part of their conversation. The court finds that this recorded conversation does not impeach the plaintiffs' credibility.

Food Lion also relies on the testimony of Tom Mosley, who replaced Wayne Tew as meat market manager. He testified that he has been able to meet the Effective Scheduling requirements without working off-the-clock. This testimony, even if accepted by the court as credible, is largely irrelevant. Food Lion seems to be contending that if Tew and Lyle had to work off-the-clock, it was because they were incompetent. That would not change the fact, however, that they worked off-the-clock with the knowledge of Food Lion officials. If Tew and Lyle were incompetent, Food Lion should have dismissed them and not allowed them to work off-the-clock.

Food Lion contends that even if the court believes the testimony of the plaintiffs, that testimony is insufficient to establish a violation of FLSA. In *Pforr v. Food Lion, Inc.*, 851 F.2d 106 (4th Cir.1988), the district court found in favor of the plaintiffs, but the Fourth Circuit reversed. The district court relied on the testimony of three witnesses who stated they discovered the plaintiffs working off the clock on several occasions. The court of appeals stated that this was insufficient to support the finding that Food Lion knew of 1350 hours of off-the-clock work by the plaintiffs, particularly since two of those witnesses stated that they immediately told the plaintiffs to

stop working off-the-clock. The court stated that Food Lion did not "suffer or permit" the work to occur. *Pforr*, 851 F.2d at 109.

In contrast, Tew and Lyle testified to a series of incidents from which it is clear that Food Lion store managers knew, not of a few isolated instances, but of a continuing practice of working off-the-clock. The plaintiffs' testimony is that the defendant's officials knew that they were working off-the-clock on a regular basis over the relevant time span. This evidence is sufficient to support a finding for the plaintiffs under the *Pforr* standard.

Food Lion contends next that the plaintiffs have not shown the number of hours worked off-the-clock, but have merely estimated that figure. To an extent that is true. However, the plaintiffs are asking for significantly less than they have estimated. The plaintiff's testimony as to their daily schedule was as precise as can reasonably be expected from FLSA plaintiffs. Their testimony was sufficient to support an award based on 15 hours per week for Tew and six hours per week for Lyle. They testified to substantially more hours than that, but reducing the award to the amount requested gives the benefit of the uncertainty in the plaintiffs' numbers to Food Lion.

Food Lion points to a few weeks in which the plaintiffs clocked in for less than forty hours a week. Food Lion contends that if the plaintiffs worked off-the-clock, some of their hours were not overtime hours. Again, the plaintiffs have testified to many more hours than they are requesting compensation for. The court is satisfied that even in those weeks in which fewer than forty hours were worked on-the-clock, the plaintiffs worked the overtime hours they are alleging.

Accordingly, it is hereby ORDERED that judgment be entered in favor of the plaintiff Wayne Tew in the amount of $22,275 in uncompensated overtime wages [2] and $22,-

---

off-the-clock to perform their tasks and keep their jobs. Food Lion store managers, under productivity pressures similar to those experienced by Tew and Lyle, benefitted from having

the plaintiffs work off-the-clock and so tacitly acquiesced.

**2.** (90 weeks × 15 hours × $16.50).

275 in liquidated damages for a total of $44,550. It is further ORDERED that judgment be entered in favor of the plaintiff Belinda Faye Lyle in the amount of $4,401 in uncompensated overtime wages[3] and $4,401 in liquidated damages for a total of $8,802. These amounts are to accrue interest at the rate of 6.62% from the date of judgment. Plaintiffs' counsel is directed to submit his request for attorneys' fees and costs within 30 days of the date of judgment.