978 F.2d 1256
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Maron E. SELBY, Sr., Plaintiff-Appellant,
v.
INTERNATIONAL BUSINESS MACHINES Corporation, Defendant-Appellee.
 No. 91-1804.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 3, 1992
Decided: October 30, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Richard L. Williams, Senior District Judge. (CA-90-240-A)
 ARGUED: Elaine Charlson Bredehoft, Charlson & Bredehoft, P.C., Fairfax, Virginia, for Appellant.
 Jeffrey George Huvelle, Covington & Burling, Washington, D.C., for Appellee.
 ON BRIEF: John M. Bredehoft, Charlson & Bredehoft, P.C., Fairfax, Virginia, for Appellant.
 Eric C. Bosset, Covington & Burling, Washington, D.C.; Arthur H. Reagin, IBM Corporation, White Plains, New York, for Appellee.
 E.D.Va.
 Affirmed.
 Before NIEMEYER and LUTTIG, Circuit Judges, and GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Maron E. Selby ("Selby") brought this suit in the United States District Court for the Eastern District of Virginia seeking to recover for Defendant International Business Machines Corporation's ("IBM") termination of his employment on a variety of grounds. Only three claims survived to trial-breach of employment contract and claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., for racial discrimination and retaliation. These causes of action were tried in two days. On the first day, the breach of contract claim was tried to a jury which reached a verdict for IBM. On the second day, the Title VII claims were tried to Judge Williams who issued Findings of Fact and Conclusions of Law, ruling for IBM on Selby's Title VII claims.
 
 
 2
 Selby appeals only from the trial court's decision on his Title VII claims. He asserts that the trial court erred in its finding that Selby had failed to prove his Title VII claims. Selby also argues that the trial court erred in permitting IBM, on cross examination, to ask a certain question of a witness. IBM asked the witness, an IBM employee, whether he held the opinion that Selby's supervisor had been motivated by racial bias in the treatment of the witness and other employees.
 
 
 3
 The facts, which are stated at length in the trial court's Findings of Fact and Conclusions of Law, need be stated only briefly here. Selby was employed by IBM in 1969 and worked as a customer engineer until he was fired in February of 1982 for failure to follow management directives. Selby filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and sought internal review at IBM. The IBM internal review process resulted in Selby's reinstatement in April of 1982, prior to any determination by the EEOC. Upon reinstatement, he was assigned to the Rosslyn, Virginia office and in 1986 was transferred to the Reston, Virginia office.
 
 
 4
 There were several incidents involving Selby's refusal to follow management directives while working in Rosslyn under the supervision of Mike Sweeney ("Sweeney"). The final straw (although by no means the entire reason for Selby's discharge) was the March 1415 lunch break incident. Selby had been directed, on several occasions, that he was, like all in his position, to take a forty-five minute lunch break at noon. On March 14, 1988, Selby notified the IBM Technical Call Coordinator ("TCC") at 11:45 a.m. that he had completed a call and was available for a new assignment. The TCC told Selby no other call was pending and directed him to take lunch then. Selby did not do so but proceeded to do some work at a customer's location and at the IBM office. At 2:30 p.m. he was dispatched to deliver service manuals to a co-worker at a People's Drug Store location and to handle a service call at the Immigration and Naturalization Service ("INS"). Selby dropped off the manuals, but did not go to INS that day.
 
 
 5
 It should be noted at this point that IBM's noon lunch directive was not irrational. First of all, it is IBM's business judgment that it is most efficient for scheduling if all customer service employees take their lunch breaks at noon so that they are available for service calls the remainder of the day. Second, if an employee takes no lunch break, but works the entire day, the IBM accounting system will automatically pay overtime for the extra three-quarters of an hour. In Selby's case on March 14, 1988 he claims he took no time at all for lunch but, to avoid overtime, he "fudged" his time report by reducing by fortyfive minutes the time he devoted to a customer.
 
 
 6
 On March 15, 1988, Sweeney confronted Selby about his failure to take lunch when directed and his failure to take care of the INS service call. Selby said that he had called the INS office and found it was closed. As to the lunch issue, there were two versions presented at trial. The trial court found IBM's version to be true and found that Selby had said he didn't take the directed lunch break because he was not hungry and reiterated his refusal to take lunch at noon if he was not hungry then.
 
 
 7
 After the March 15th conversation, Selby's supervisor recommended that he be fired. The recommendation was adopted and, on March 17, 1988, Selby was informed of his termination for refusing to follow management directions including, but not limited to, the lunch time issue.
 
 
 8
 The trial court found that although Selby met the relatively easy burden of proving a prima facie case of discrimination under McDonnell Douglas v. Green, 411 U.S. 792 (1973), IBM satisfied its rebuttal burden by advancing as the reason for Selby's termination his failure to follow management direction. Selby did not meet his burden to prove that the reason advanced by IBM was pretext for discrimination.
 
 
 9
 The district court's findings are factual and can be reversed only if clearly erroneous. See Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985); Gairola v. Com. of Va. Dep't of Gen'l Services, 753 F.2d 1281, 1288 (4th Cir. 1985). As noted by this Court in Davis v. Food Lion, 792 F.2d 1274 (4th Cir. 1986), we can find no clear error if there are two permissible views of the evidence, and the district court as fact finder chooses one over the other. In a case like this in which conflicting testimony is presented, any permissible reading of the facts by the district court will be upheld.
 
 
 10
 The district court found that IBM's lunch policy was within its discretion and made good business sense. It is not unreasonable for an employer to want its employees to take a break in order to avoid incurring forty-five minutes of unnecessary overtime per day. It is quite rational for the company to require employees to take the fortyfive minutes break rather than to work through it and "fudge" the records as Selby did here.* The record is also clear that, at least during 1987 and 1988, Selby refused to follow his supervisor's directions, on several occasions. Moreover, as found by the trial court, when confronted with the issue on March 15, 1988, Selby flatly stated that he would not in the future follow his supervisor's directions. The trial court found, and this court cannot disagree, that Selby failed to prove IBM's articulated legitimate grounds for discharge to be pretext for discrimination.
 
 
 11
 Selby argues that IBM's alleged failure to follow its "performance plan" before terminating him was discriminatory. However, Selby did not even prove that the performance plan applied to his failure to follow management direction. The key document, which supposedly covers dismissal for violations of terms and conditions of employment, Manager's Guide to Performance Planning, Counselling and Evaluation-Form ZV04-0066, was not produced at trial. The only evidence presented as to whether the performance plan applied to Selby's termination was testimony by David Thomas, an IBM manager, that the written evaluation policy did not apply, and Selby's testimony that it did. The trial court cannot be faulted for rejecting Selby's performance plan argument.
 
 
 12
 Finally, it is necessary to deal with Selby's evidentiary issue. At trial Selby presented the testimony of an IBM employee, Lovelle Ricks. On direct examination, Selby established that in 1987 the witness worked under Sweeney, had communication problems with Sweeney and requested and obtained a transfer to another department. Selby's counsel also obtained on direct examination the following:
 
 
 13
 Q.Did you have at the time of your transfer a perception that Mr. Sweeney picked on blacks more than whites?
 
 
 14
 A.Yes.
 
 
 15
 On cross examination, IBM counsel brought out that since the 1987 transfer, Ricks had worked for Sweeney on two separate occasions. Then, following an overruled objection based on relevancy grounds, the following testimony was provided:
 
 
 16
 Q.Is it your opinion today that Mr. Sweeney was not motivated by racial bias in his treatment of you or other employees in his unit?
 
 
 17
 A.Yes.
 
 
 18
 In the Fourth Circuit, evidentiary rulings are reviewed on an abuse of discretion standard. See Persinger v. Norfolk & Western Railroad Co., 920 F.2d 1185, 1187 (4th Cir. 1990). This Court cannot find error, much less reversible error, in the admission of this evidence. Plaintiff "opened the door" on direct examination by asking for the witness's 1987 perception of Sweeney's favoritism of whites over blacks. 1 Weinstein & Berger, Weinstein's Evidence p 106 at 10618 (1986). With the direct testimony quoted above, it is hardly an abuse of discretion to permit the cross-examiner to elicit the fact that the witness' opinion of Sweeney's 1987 motivation has changed by virtue of post-1987 contacts with Sweeney. In effect, the Plaintiff presented Ricks' statement that in 1987 Ricks thought Sweeney was biased and got a transfer. The defense was properly allowed to counter with Ricks' statement that based upon more recent experience he now believes that his 1987 perception had been erroneous.
 
 
 19
 Even assuming that the trial court erred by admitting this evidence, such an "error" would by no means require reversal here. The evidence was not referred to by the trial court in its findings of fact. It can by no stretch of the imagination be considered to have induced the district court judge to make an essential finding which would not otherwise have been made. See Multi-Medical Convalescent, Etc. v. N.L.R.B., 550 F.2d 974, 977 (4th Cir. 1977). Hence, even if it had been error to admit the evidence, reversal would be neither required nor appropriate.
 
 
 20
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 Indeed, an employer may be exposed to liability if it "suffers work" or permits employees to work, uncompensated, through lunch breaks. See Mumbower v. Callicott, 526 F.2d 1183, 1188 (8th Cir. 1975); 29 C.F.R. § 785.19; Donovan v. Kentwood Development Co., Inc., 549 F. Supp. 480, 488 (D. Md. 1982) (Under the Fair Labor Standards Act, employee is to be compensated for time spent predominantly for employer's benefit.)