**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES R. COATES,
Plaintiff-Appellant,

v.

No. 96-6924

BENJAMIN WILLIAMS, Sergeant;
ALPHONSO SMITH, Officer; OFFICER
LUMPKIN,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-94-891-3)

Argued: December 6, 1996

Decided: December 26, 1996

Before WILKINS, HAMILTON, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barbara J. Hughes, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. William Alexander For-
rest, Jr., SANDS, ANDERSON, MARKS & MILLER, Richmond,
Virginia, for Appellees. **ON BRIEF:** Gerald T. Zerkin, Melanie A.

Hopper, GERALD T. ZERKIN & ASSOCIATES, Richmond, Virginia, for Appellant. Archibald Wallace, III, L. Lee Byrd, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Charles R. Coates, a prison inmate, sued several prison officers under 42 U.S.C.A. § 1983 (West 1994), alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment. After a trial, the magistrate judge issued a report and recommendation in which he found that Coates's Eighth Amendment rights had not been violated. Coates filed objections to this report and recommendation. The district court, after a de novo review of the record, adopted the magistrate judge's factual findings and recommendations in full. Coates now appeals, challenging both the district court's factual findings and choice of legal standard. We affirm.

I.

In September of 1993, Coates was an inmate confined at the Greensville Correctional Center (GCC) in Jarratt, Virginia. On September 9, 1993, Sergeant Williams and Officer Allen, both officers at GCC, caught Coates drinking homemade wine in the prison recreation yard with inmates Brown and Harding. Sergeant Williams confiscated the wine and ordered the three inmates back to their cells. While escorting the drunk and belligerent inmates to their cells, Sergeant Williams and Officer Allen were joined by Sergeant Moody, Officer Lumpkin, and Officer Smith.*

_____

*Coates originally sued Sergeant Williams, Officer Lumpkin, and Officer Smith. Only Officer Smith is a party to this appeal, however, and we consider the conduct of the other officers only to the extent relevant to the claim against Officer Smith.

2

The inmates resisted, both while outside and after reaching the entrance area to the building in which their cells were contained. Once in this entrance area, the still-resisting inmates were joined by inmate Parks, who tried to persuade them to cooperate with the officers. In response to the inmates' resistance, Sergeant Williams told them that they were to be handcuffed and taken to the watch commander's office. The drunk inmates remained combative, and Brown tried to escape. Sergeant Williams prevented Brown's escape and closed the door to the entrance area. The inmates, trapped in the small entrance area, refused to cooperate, and Brown began striking out at the officers.

Eventually, the officers handcuffed the drunk inmates despite their continued resistance. During the confrontation, however, over one hundred inmates had gathered outside the door and windows to the entrance area. The drunk inmates, although partially restrained, continued to resist by running around the entrance area, spitting, yelling, cursing the officers, and encouraging the inmates outside to riot. The inmates gathered outside were noisy and agitated, and some of the guards testified that a riot seemed imminent. In response to this threat, the officers forced the inmates to the floor and applied leg shackles.

After being shackled, Coates sustained a three-inch cut to his head. The parties differ over the cause of this injury. Coates claims that he ceased all physical resistance after being shackled. He admits, however, that he continued to insult Officer Smith in racial terms. According to Coates, Officer Smith became enraged by these insults and repeatedly struck Coates's head against the cement floor. Officer Smith, on the other hand, claimed below that he never touched Coates after applying the leg shackles, and that Coates injured himself by head-butting the walls and floor of the entrance area. The district court rejected both stories. Instead, after hearing the testimony of other witnesses, the district court found that Coates continued to resist after being shackled, and that Officer Smith injured Coates while trying to quell this resistance. On appeal, Officer Smith has abandoned his original story, and now accepts the factual findings of the district court.

Coates raises three arguments on appeal. First, he claims that the district court erred in applying the "malicious and sadistic" legal stan-

3

dard. Second, he challenges the district court's factual findings. Finally, he argues that even accepting the "malicious and sadistic" legal standard and the district court's factual findings, Officer Smith used excessive force. We consider these arguments in order.

II.

Coates first claims that the district court erred in applying the "malicious and sadistic" standard, rather than the"deliberate indifference" standard, to his Eighth Amendment claim. We review the district court's choice of legal standard de novo, see Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 126-27 (4th Cir. 1995), and we reject Coates's argument.

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Since Hudson, the Fourth Circuit has further clarified the two legal standards applicable to Eighth Amendment claims. "[W]hen an inmate claims that prison officials failed to provide him with adequate medical care or that conditions of confinement constitute cruel and unusual punishment, he must demonstrate that prison officials acted with `deliberate indifference' . . . ." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). If, however, "an inmate claims . . . that prison officials used excessive force on him, he is forced to meet a higher standard to establish the subjective component" of the Eighth Amendment analysis. Id . This higher standard, as articulated in Williams, requires that "a prisoner . . . demonstrate that officials applied force `maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley, 475 U.S. at 320-21). In short, a prisoner claiming the use of excessive force under the Eighth Amendment must satisfy the "malicious and sadistic" standard. Therefore, because Coates's claim is based on the use of excessive

4

force, rather than on the conditions of his confinement, we conclude that the district court applied the correct legal standard.

Coates next contests the district court's factual findings. The district court found that Coates and the other inmates continued to resist after being restrained, and that Officer Smith's actions were taken in response to this obstructive behavior. Coates claims, however, that he did not resist after the shackles were applied and that Smith acted in response to racial insults. Coates also disputes the district court's conclusion that his injury was accidently inflicted when Smith lifted him from the ground, hitting his head against a light fixture.

In reviewing an Eighth Amendment claim, we may reverse the factual findings of the district court only if they are clearly erroneous. See Brice v. Virginia Beach Correctional Ctr., 58 F.3d 101, 105 (4th Cir. 1995). Therefore, we "may not substitute our judgment on factual issues for that of the [district court] unless, after a complete review of the record, we are `left with the definite and firm conviction that a mistake has been committed.'" Id. at 105 (quoting Miller v. Mercy Hosp., Inc., 720 F.2d 356, 361 (4th Cir. 1983)). And "we can find no clear error if there are two permissible views of the evidence, and the district court as fact-finder chooses one over the other." Davis v. Food Lion, Inc., 792 F.2d 1274, 1277 (4th Cir. 1986). Applying this standard, we affirm the factual findings of the district court.

Coates makes much of the fact that the district court rejected Officer Smith's version of the event. It is true that Smith claimed below that he made no physical contact with Coates after he was shackled. (J.A. at 31.) For his part, Coates claims that he did not resist after being shackled. The district court, unimpressed with the veracity of either witness, found instead that Coates resisted after being shackled, and that in response Smith "grabbed plaintiff around his waist, lifted him up in the air and threw him back down onto the concrete floor." (J.A. at 256.) There is adequate testimony in the record to support these factual findings, and we will not disturb them.

Officer Moody, who witnessed the event, testified that "after putting the leg irons on them, they were still being disruptive and disorderly and cursing . . . . They were totally drunk and disorderly and

5

being disruptive the whole time." (J.A. at 191.) Officer Moody also testified about the surrounding events:

> We had the doors shut and several officers [were] holding the door because at the time [there were] so many inmates on the outside, that when they [were] pulling the door, to the whole door, doorjamb [sic], seemed to be moving. . . . Brown started hollering out the window, telling the other inmates to tear the door down, set the place on fire, "We're going to [expletive] them up in here."

(J.A. at 190.)

Moreover, inmate Grammer, who witnessed the event through a window to the entrance way, testified that Coates's three-inch gash was inadvertently inflicted when Officer Smith lifted Coates from the floor. According to Grammer, Coates "wasn't bleeding until Mr. Smith lifted him up when he hit that light there." (J.A. at 163.) Similarly, inmate Brown testified that "Smith was standing behind [Coates] and grabbed him in-between [sic] his shackles, picked him up off the ground and slammed his face into the light that was coming out of the ceiling." (J.A. at 107.) The district court, after considering this testimony, found that Coates's "head injury was accidently inflicted when Smith picked [him] up to take him down" and Coates's "head `caught' on the overhead light fixture." (J.A. at 257.)

Thus, although Coates adduces some evidence to support his version of the event, there is also evidence to support the district court's conclusions. Because the district court's factual findings are credible and supported by the record, we affirm them as not clearly erroneous.

Coates' final claim on appeal is that, even accepting the "malicious and sadistic" legal standard and the district court's factual findings, the prison guards nonetheless used excessive force. We reject this claim. The district court found that Coates was drunk and belligerent, that the resisting inmates urged the inmates assembled outside to riot, that these inmates assembled outside were so agitated that a riot was imminent, and that Smith inadvertently injured Coates's head in lifting him from the floor. On these facts, we agree with the district court that Officer Smith clearly acted "in a good-faith effort to maintain or

6

restore discipline," and not "maliciously or sadistically to cause harm." See Hudson, 503 U.S. at 7. Therefore, Coates did not suffer a deprivation of his Eighth Amendment rights.

III.

In conclusion, we hold that the district court applied the proper legal standard, that the factual findings of the district court are not clearly erroneous, and that Officer Smith's actions were not "malicious and sadistic." Accordingly, we affirm.

AFFIRMED