**Joseph DARRIKHUMA, Plaintiff,**

v.

**The SOUTHLAND CORPORATION, Defendant.**

**Civil No. AW-94-2724.**

United States District Court, D. Maryland.

Jan. 27, 1997.

---

Cynthia L. Butler, Butler & Spears, Washington, DC, for Plaintiff.

Michael F. Marino, Thomas Patrick Murphy and Eric A. Welter, Reed, Smith, Shaw & McClay, McLean, VA and John R. Erickson, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Presently pending before the Court for consideration are Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. Both parties have filed responses and replies. For the reasons stated below, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Cross-Motion for Summary Judgment will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed. At the time of the events in question, plaintiff Joseph Darrikhuma was employed as a Human Resources Clerk with defendant Southland Corporation in Market 2543.[1] Amended Compl. at ¶ 17. In this capacity, Plaintiff performed administrative tasks that were related to personnel matters and was responsible for the maintenance of the personnel files. Id. at ¶ 18. During the entire time in question, Plaintiff worked as a hourly employee. Amended Compl. at ¶ 17. Plaintiff recorded the hours he worked for each pay period on a time sheet, which contained a statement warning employees about working off-the-clock hours and being paid for hours not actually worked. Defendant's Mem. Supp. Summ. J. at Appendix 23.

While serving as a Human Resources Clerk, Plaintiff was supervised by various individuals. Frank Shelton ("Shelton"), an Assistant Market Manager, supervised Plaintiff from the start of the position until January of 1992. Defendant's Mem. Supp.

Summ. J. at 7, 9. Upon Shelton's departure from Defendant, Plaintiff was put under the immediate supervision of Patty Cooper–Hardy ("Cooper–Hardy"), a Market Manager, and the "dotted line" supervision of Carol Bartlett ("Bartlett") until December of 1992.[2] After that time, Plaintiff reported directly to Bartlett and was "dotted lined" to Cooper–Hardy.

During the course of his employment, Plaintiff's work performance was evaluated by Shelton, Cooper–Hardy, and Bartlett. Additionally, Plaintiff filed two complaints with the Equal Opportunity Employment Commission ("EEOC") while employed with Defendant. Also, several incidents involving Plaintiff, including the one which led to his termination, took place during the relevant time. The above occurrences will be discussed in a chronological sequence.

Under Shelton's supervision, Plaintiff received a total of six Performance Appraisals ("Appraisal"). Defendant's Mem. Supp. Summ. J. at Appendix 5. Plaintiff received the following ratings on each of the six Appraisals:

| Date of Appraisal | Overall Rating |
| --- | --- |
| January 15, 1988 | 3.25.[3] |
| July 28, 1988 | 4.50.[4] |
| August 28, 1989 | 4.47 |
| December 29, 1989 | 4.25 |
| July 5, 1990 | 5.0 |
| June 25, 1991 | 3.27 [5] |

Each Appraisal noted that "[an employee's] signature does not necessarily signify [his or her] agreement with the [A]ppraisal; [i]t simply means that the [A]ppraisal was discussed with [the employee]." Id. Plaintiff

---

1. Defendant operates "7–Eleven" and "High's" stores all across the United States. Plaintiff began employment with Defendant in July of 1983 as store staff and was subsequently promoted to the Assistant Manager position in 1984. On or about January of 1987, Plaintiff held the position as a Field Assistant until June of 1987 and then served as a Market Personnel Administrator. His title, Market Personnel Administrator, was later changed to the name Human Resources Clerk.

2. Bartlett was the Area Personnel Manager at the time Plaintiff applied for the Human Resources Clerk position. Consequently, Bartlett interviewed and hired Plaintiff for that position.

3. The period of evaluation for this Appraisal was from June to December of 1987. However, it was noted that this Appraisal was based on Plaintiff's performance during the two months that he had been reporting to Shelton. The performance ratings ranged from 1 to 4, with 4 being the highest.

4. The possible ratings were from 1 to 5, with 5 being the highest. This particular rating system stayed in place for the remainder of Plaintiff's employment.

5. A 3.27 meant that Plaintiff met the job performance requirements.

signed each of the Appraisals with the exception of the one dated June 25, 1991.[6] *Id.*

In August of 1991, Shelton documented Plaintiff for alleged unauthorized use of overtime. Amended Compl. at ¶ 26; Defendant's Mem. Supp. Summ. J. at Appendix 7. Thereafter, Shelton informed Plaintiff that any further unauthorized use of overtime would result in disciplinary action or termination. Plaintiff Depo. at 112.

Additionally, on or about September 16, 1991, Shelton completed an Employee Performance Notice ("Notice") which involved Plaintiff. Defendant's Mem. Supp. Summ. J. at Appendix 8. The Notice stated that it served as a "final warning" with respect to several alleged performance-related shortcomings by Plaintiff. *Id.* Moreover, the Notice warned that if Plaintiff's alleged faults caused an inconvenience to a new employee, he would be terminated immediately. *Id.* Plaintiff received verbal counselling about the above matters on or about September 19, 1991. Plaintiff Depo. at 159. However, the Notice indicated that Plaintiff refused to sign it. Defendant's Mem. Supp. Summ. J. at Appendix 8.

On or about September 30, 1991, Plaintiff filed his first complaint of discrimination with the EEOC. Amended Compl. at ¶ 28; Defendant's Mem. Supp. Summ. J. at 9. Bartlett, on behalf of Defendant, responded to Plaintiff's charge. Bartlett Depo. at 74. During the course of her investigation, Bartlett talked with Cooper–Hardy about Plaintiff's allegations. *Id.* at 75–76.

As of January, 1992, Plaintiff was under the direction of Cooper–Hardy. Plaintiff Depo. at 40. While under her supervision, he received a few documented letters and one additional Appraisal. On or about February 4, 1992, Cooper–Hardy presented Plaintiff with a letter which detailed her concerns about a number of alleged performance problems. Defendant's Mem. Supp. Summ. J. at Appendix 9. In this letter, Cooper–Hardy concluded that Plaintiff's performance problems had been on going for the past eight months and Plaintiff had thirty days to

correct them or disciplinary action, including termination, would result. *Id.* Plaintiff refuted Cooper–Hardy's allegations and voiced further claims of discrimination in an undated written letter. Plaintiff's Opp.'n at Appendix 6.

On or about March 9, 1992, Cooper–Hardy informed Plaintiff that his job performance had met the required standards within the last thirty days. Defendant's Mem. Supp. Summ. J. at Appendix 10. In a subsequent Appraisal, dated June 26, 1992, Plaintiff received an overall rating of a 3.0, which meant that Plaintiff had met the job performance requirements. Amended Compl. at ¶ 39; Defendant's Mem. Supp. Summ. J. at Appendix 11. Plaintiff disagreed with Cooper–Hardy's evaluation of his performance and submitted a written rebuttal to his Appraisal, which was dated July 3, 1992. Plaintiff's Opp.'n at Appendix 6.

On or about July 6, 1992, Cooper–Hardy documented Plaintiff for allegedly leaving the office during working hours without her prior approval. Defendant's Mem. Supp. Summ. J. at Appendix 12. Cooper–Hardy indicated to Plaintiff that if he was late or left early once more without her approval, he would be terminated immediately. *Id.* Additionally, she informed Plaintiff that if she was absent from the office, he was to get approval from Dick Yost ("Yost") or Terry Fissell ("Fissell"), who served as Assistant Market Managers. *Id.*

Plaintiff filed his second EEOC complaint, on or about December 3, 1992. Amended Compl. at ¶ 46. Sue Bathgate ("Bathgate"), an employee of Defendant, provided the response to Plaintiff's charge. Plaintiff's Opp.'n at 7–8; Bartlett Depo. at 74.

In December of 1992, Plaintiff was placed under the immediate supervision of Bartlett and the "dotted line" supervision of Cooper–Hardy. The event that led to Plaintiff's termination took place during this time. In February of 1992, Teresa Garrison ("Garrison"), an employee of Defendant, approached Plaintiff about helping her to obtain financial

---

6. Plaintiff discussed this particular Appraisal with Shelton. However, the Appraisal indicated that Plaintiff refused to sign it.

assistance. Amended Compl. at ¶ 52; Plaintiff Depo. at 61. Plaintiff suggested that Garrison use her accrued vacation time.[7] Plaintiff Depo. at 63. In order to inquire as to whether an employee could request money in lieu of actually taking the earned time off, Plaintiff telephoned Bartlett. *Id.* She told Plaintiff that other markets permitted employees to do this. *Id.* at 64; Bartlett Depo. at 96. She then directed Plaintiff to complete a Manager's Fund Check Request ("P–6") and get Cooper–Hardy's signed approval. Plaintiff Depo. at 64. Plaintiff informed Bartlett that Cooper–Hardy was out of the office. *Id.;* Bartlett Depo. at 96. He then asked if he could get the approval from one of Cooper–Hardy's assistants, who were Yost and Fissell.[8] Plaintiff Depo. at 64; Bartlett Depo. at 96–97. Bartlett said yes. Plaintiff Depo. at 64; Bartlett Depo. at 96–97.

Plaintiff filled in a P–6, signed it, and took it to Yost. Plaintiff Depo. at 65. The P–6 requested that a check be issued to Garrison for "92 VP for employee ADVANCE per employee request." Defendant's Mem. Supp. Summ. J. at Appendix 13. The request was for the amount of $795.80. *Id.* Yost refused to approve the request. Plaintiff Depo. at 66; Defendant's Mem. Supp. Summ. J. at Appendix 15. Additionally, Yost told Plaintiff that it might be a policy violation to issue pay in lieu of an employee taking accrued vacation. Plaintiff Depo. at 66; Defendant's Mem. Supp. Summ. J. at Appendix 15. As a result, Yost told Plaintiff that he would have to wait until Cooper–Hardy returned. Plaintiff Depo. at 66; Defendant's Mem. Supp. Summ. J. at Appendix 15. Yost kept the P–6 and attached a note to it for Cooper–Hardy's review. Defendant's Mem. Supp. Summ. J. at Appendix 15.

On the same day, Plaintiff completed another P–6. Plaintiff Depo. at 70. This request asked that a check be issued to Garrison for "92 Vacation Pay[.] Please deduct for all groc bills and ins." The signed request was for the amount of $795.60. Defendant's Mem. Supp. Summ. J. at Appendix 14. Plaintiff put the P–6 in Fissell's mailbox along with other paperwork that required approval. Defendant's Mem. Supp. Summ. J. at Appendix 15.

Upon Cooper–Hardy's return, Yost talked with her about the conversation surrounding the first P–6 that had transpired between him and Plaintiff. Defendant's Mem. Supp. Summ. J. at Appendix 15; Cooper–Hardy Depo. at 70. Cooper–Hardy went to Plaintiff's office and an exchange with respect to Plaintiff's conduct involving the Garrison situation took place. Cooper–Hardy Depo. at 70.

At some point later, Cooper–Hardy communicated with Bartlett and recommended that Plaintiff be transferred out of her market or terminated. Cooper–Hardy Depo at 74; Plaintiff's Opp.'n at 11. Bartlett went to Plaintiff and they had another conversation about both P–6s. Bartlett Depo. at 109. Bartlett conducted a one day investigation, which included conversations with Yost and Fissell. Barlett Depo. at 109, 111, 139–140. Additionally, Yost and Fissell provided statements detailing their knowledge of what had occurred. Defendant's Mem. Supp. Summ. J. at Appendix 15. Bartlett reviewed the incident with Karla Leavelle, her immediate supervisor. Bartlett Depo. at 139; Leavelle Depo. at 62. Plaintiff was subsequently terminated by Bartlett on March 5, 1993. Amended Compl. at ¶¶ 59–60.

On May 21, 1993, Plaintiff filed a third charge of discrimination with the EEOC. Amended Compl. at ¶ 61; Defendant's Mem. Supp. Summ. J. at Appendix 17. He alleged that Defendant had retaliated against him for filing the two previous EEOC complaints. Amended Compl. at ¶ 61; Defendant's Mem. Supp. Summ. J. at Appendix 17. The EEOC investigated Plaintiff's charge and determined that Plaintiff's claim of retaliation was meritless. Defendant's Mem. Supp. Summ. J. at Appendix 19. It then advised Plaintiff of his right to sue. *Id.*

Plaintiff filed the instant action with this Court on October 3, 1994. Plaintiff subsequently filed an Amended Complaint on April

---

7. This was vacation time that Garrison had already earned.

8. An assistant to Cooper–Hardy was once labeled an Assistant Market Manager. At this time, the title had changed to a Senior Field Consultant.

19, 1995. His Amended Complaint alleged thirteen counts against Defendant. The Court, however, dismissed eleven of those counts. Consequently, Plaintiff now alleges two counts against Defendant: (1) violation of Section 7(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1) and (2) retaliatory termination.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The movant must demonstrate that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). While the Court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment, *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), the mere existence of a "scintilla of evidence" is not enough to frustrate the motion. To defeat it, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## III. DISCUSSION

### A. Violation of the FLSA

■ Section 207(a)(1) of the FLSA states:

> [N]o employer shall employ any of his employees ... for a workweek longer than forty hours per week unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

In order to prove that Defendant has violated the FLSA, Plaintiff must show that he "worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946)). Additionally, Plaintiff must prove that he was "employed" by Defendant, and under the FLSA, "employ" means "to suffer or permit to work." *Davis*, 792 F.2d at 1276. Therefore, in order to show that he was "employed" for purposes of FLSA, Plaintiff must prove that Defendant "had knowledge, either actual or constructive, of his overtime work." *Id.*

Plaintiff alleges that while under Cooper–Hardy's direct supervision, he was "forced" to work overtime in order to complete the work. Plaintiff avers further that Cooper–Hardy would not authorize the overtime and she threatened that if he needed it, he would be replaced. Consequently, Plaintiff claims that he began working overtime hours and not reporting those hours on his time sheet. Plaintiff admits that he did not inform Cooper–Hardy of his alleged off-the-clock hours. He, however, avers that Modupe Shomide ("Shomide"), a Field Consultant for Defendant, knew about his working off-the-clock hours.[9] As a result, Plaintiff argues that Defendant had constructive knowledge of his off-the-clock work. Additionally, Plaintiff claims that on or about January of 1993, it was revealed in a staff meeting that he and other employees were working off-the-clock hours.

■ The Court believes that Plaintiff has failed to show that Defendant had actual or constructive knowledge of his off-the-clock work. Plaintiff's contention that Shomide's knowledge of his off-the-clock work is unsupported. Shomide acknowledges that she saw Plaintiff on the weekends. Shomide Depo. at 63. However, she thought that Plaintiff was a salaried employee. *Id.* The fact that Shomide saw Plaintiff on the weekends in no way shows that Shomide knew about Plaintiff's

---

9. Shomide's former last name was Aderibigbe.

off-the-clock work.[10] Additionally, Plaintiff offers no more than his own unsupported allegations that Defendant was actually advised of his working on the job and not being paid for those hours. Thus, Plaintiff has failed to establish that Defendant had constructive or actual knowledge.

Although it was established that Defendant's overtime policy for every position changed a number of times because of Defendant's reorganizations, that alone is insufficient to show that Defendant knew about Plaintiff's alleged off-the-clock work hours. Therefore, Defendant's motion must be granted.

### B. Retaliatory Discrimination

■ In the absence of direct evidence of retaliation, the standard pronounced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies to Plaintiff's claim of retaliation. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985). Therefore, to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he was engaged in protected activity; (2) he suffered an adverse employment decision; and (3) there is a causal connection between his protected activity and the adverse action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) (citing *Ross,* 759 F.2d at 365).

■ Once Plaintiff has presented a *prima facie* case, the burden then shifts to Defendant to proffer a legitimate nondiscriminatory reason for its actions. If Defendant meets its burden, Plaintiff must demonstrate that Defendant's reason is pretextual. *Williams,* 871 F.2d at 457.

Neither party disputes that Plaintiff's filing of his prior discrimination claims is protected activity and that he was subsequently terminated. Defendant, however, contends that Plaintiff has failed to establish that its decision to discharge him has a causal connection with the filing of his EEOC charges.

Plaintiff disagrees with Defendant's argument.

■ The Court believes that Plaintiff has established a *prima facie* case. Although Plaintiff's proof that he was terminated after Bartlett became aware of his filing the discrimination charges is sufficient in meeting the causality for his *prima facie* case, it does not conclusively establish the requisite causal connection. *Id.*

Notwithstanding the fact that Plaintiff has met his initial burden by establishing a *prima facie* case, the Court finds that Plaintiff has failed to rebut Defendant's legitimate nonretaliatory reason for termination. Bartlett stated that she fired Plaintiff for insubordination.[11] Bartlett Depo. at 102. More specifically, she referred to two acts by Plaintiff which allegedly amounted to insubordination. The first relevant act was Plaintiff's failure to comply with the "directives" of Yost, his superior. Bartlett Depo. at 102.

The Court agrees that Plaintiff's conduct involving Yost amounted to insubordination. It is undisputed that Yost refused to approve the first P–6. Additionally, Yost told Plaintiff that issuing pay in lieu of taking earned vacation might be a policy violation. He further instructed Plaintiff to wait until Cooper–Hardy returned. Plaintiff, however, ignored Yost's instructions. He completed another P–6 and submitted it to Fissell for her approval. The Court believes that once Plaintiff defied Yost's instructions, he had committed an act of insubordination.

■ Additionally, Plaintiff fails to show any support for his contention that Defendant's legitimate nonretaliatory reason is pretextual. In order to do this, Plaintiff must establish that "but for" his filing the EEOC charges, he would not have been terminated. *Ross,* 759 F.2d at 365–66. Plaintiff's mere assertion that Bartlett and Cooper–Hardy knew about his previous EEOC charges before he was fired is insufficient to show retaliation when Defendant has established a legitimate reason for terminating

10. Plaintiff alleges that a number of other individuals saw him work overtime. Because this assertion is unsupported and vague as to whether any of those persons knew that Plaintiff worked off-the-clock hours, it must also be rejected.

11. Cooper-Hardy stated that she also recommended Plaintiff's transfer or termination because of insubordination.

him. *Williams,* 871 F.2d at 457. Additionally, Plaintiff's own unsupported allegation that Bartlett told him that "[people who file EEOC charges are] just out to milk the company," is likewise inadequate in showing retaliation in this situation.[12] Because Plaintiff has not shown that Defendant's proffered reason was pretexual, the Court finds that Plaintiff has failed to prove his claim of retaliation against Defendant.

The Court acknowledges that Plaintiff's ratings were above performance requirements at certain times during his employment. However, the fact that Plaintiff was documented for performance problems on a number of occasions cannot be overlooked. In some instances, the Court believes that Plaintiff may have made poor decisions, and the incident which led to his termination was one of them. Thus, summary judgment as to this claim will be awarded in favor of Defendant.[13]

## IV. *CONCLUSION*

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Cross–Motion for Summary Judgment will be denied. A separate order is to follow.

### *ORDER*

Upon consideration of Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment, together with both parties' Responses and the underlying record, and the reasons set forth in the foregoing Memorandum Opinion, IT IS this 27th day of January, 1997 ORDERED:

1. That Defendant's Motion for Summary Judgment as to Counts V and XI of Plaintiff's Amended Complaint BE, and the same hereby IS, GRANTED; and

2. That Plaintiff's Cross–Motion for Summary Judgment BE, and the same hereby IS, DENIED; and

3. That Defendant's Motion to Strike portions of Plaintiff and Geneva Davis' Affidavits (Paper No. 66) BE, and the same hereby IS, Moot because the Court did not rely on those portions of the Affidavits in reaching its decision; and

4. That Defendant's Motion to Strike Portions of Plaintiff's Supplemental Affidavit and to Strike Exhibit A thereto as a Sanctions (Paper No. 71) BE, and the same hereby IS, MOOT because the Court did not rely on those portions of the Supplemental Affidavit in reaching its decision; additionally, Plaintiff's counter request for Sanctions under the same motion BE, and the same hereby IS, DENIED; and

5. That this case is CLOSED; and

6. That the Clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record.

---

**12.** The second act of insubordination that Defendant claimed Plaintiff committed was deceptive conduct involving the P–6s. Barlett Depo. at 105. Because the Court has already determined that Defendant has put forth a legitimate nondiscriminatory and unrebutted reason for firing Plaintiff, the Court need not discuss whether or not there is adequate support on the record to show deception on Plaintiff's part.

**13.** In spite of Plaintiff's contention that this is a mixed motive case, the Court finds that it is not. Plaintiff has failed to establish that his filing of the EEOC claims was a motivating factor in Defendant's decision to terminate him.