**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES McGRATH,

      Plaintiff-Appellant,

v.

CENTRAL MASONRY CORP.,

      Defendant-Appellee.

No. 07-1367
(D.C. No. 1:06-cv-00224-MSK-CBS)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

Plaintiff-appellant James McGrath sued his former employer, Central

Masonry Corporation (Central), for failure to pay overtime compensation in

violation of the Fair Labor Standards Act, 29 U.S.C. § 207 (FLSA), and also

asserted a claim under the Colorado Wage Claim Act, C.R.S. §§ 8-4-101 through

8-4-123, for Central's failure to pay him the balance of a bonus upon his

separation from employment.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court granted summary judgment for Central, and McGrath appeals. We review the grant of summary judgment de novo, using the same standard as that applied by the district court. *Rodriquez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1184 (10th Cir. 2004). Thus, judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On appeal, McGrath argues that, contrary to the holdings of the district court, he had come forth with evidence of Central's actual or constructive knowledge that he had engaged in unpaid overtime work for purposes of his FLSA claim, and that he had further established that the unpaid bonus constituted "wages and compensation" for purposes of the Colorado Wage Claim Act. We agree with the district court that McGrath has failed to show that the unpaid bonus constituted wages and compensation, but we further hold that McGrath has raised a genuine issue of material fact concerning Central's knowledge of his unpaid overtime. We therefore affirm in part and reverse and remand in part.

With certain exceptions not relevant here, employers engaged in interstate commerce are required by 29 U.S.C. § 207(a)(1) to pay overtime to employees who work more than forty hours in a work week. In addition to showing that he actually worked overtime in an amount that can be established by justifiable and reasonable inference, a plaintiff proceeding under § 207(a)(1) must also show that

the employer had actual or constructive knowledge of the overtime. *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (holding that "failure to record claimed time is fatal to a later claim for such, *if the company has no reason to be aware of the overtime*" (emphasis added)). Thus, in order to withstand Central's motion for summary judgment on his FLSA claim, McGrath was required to show that a genuine issue of material fact existed relative to whether Central knew or should have known of his overtime work, even though McGrath failed to report such work on his time sheets. *See Davis,* 792 F.2d at 1276.

The district court found that McGrath's self-reported timesheets did not include the admittedly compensable time involved in attending mandatory foremen meetings, mandatory Spanish classes, and the pick-up of employee paychecks. Central's president, Neal House, testified that he has no way of knowing that an employee has worked overtime unless the employee requests approval for the extra hours and then reports them on his timesheet. Because McGrath did neither of these things, the district court held that Central had no knowledge, either actual or constructive, that McGrath was not reporting his actual hours and was actually working more than forty hours per week, or, stated differently, that the mandatory meetings, classes, and paycheck pick ups were requiring McGrath to work overtime. The court granted summary judgment to Central on the overtime claim.

This case is complicated by a procedural irregularity in the district court. Essentially, the problem arose because the parties fully briefed the summary judgment motion before the deadline for discovery had passed. After movant Central's reply to its motion for summary judgment was filed and the summary judgment motion was at issue, McGrath took two additional depositions which yielded evidence establishing an issue of fact as to whether Central had knowledge that McGrath was working uncompensated overtime. That evidence consists of testimony from Central's foremen supervisor and sole vice president, Victor Curci, that he had received complaints from "quite a few" of Central's foremen, including McGrath, that they were being required to work uncompensated overtime. Aplt. App. at 52. Curci testified that he did not discuss the issue with Central's president, Neal House, because Curci felt House's mind was closed on the subject and that his policy was not to pay for foremen meetings. *Id.* at 54. Dawn Forst, Central's office manager, also testified that other foremen complained that they were not being compensated for attendance at foreman meetings. *Id.* at 63.

After McGrath brought this evidence to the attention of the district court in the form of a supplemental response to Central's motion for summary judgment, Central moved to strike the pleading. Central argued that local rules do not contemplate the filing of sur-replies or supplemental responses without leave of the court and that McGrath had failed to confer with opposing counsel before

filing the supplement as required by the district court's local rule 7.1(A). D.C. Colo. L. Civ. R. 7.1(A).

The district court did not formally rule on these technical arguments, concluding instead that "nothing within [the supplemental response] would otherwise alter the Court's disposition of the substantive summary judgment motion." Aplt. App. at 76. The court then denied Central's motion to strike as moot.

As mentioned above, the district court held that McGrath had "failed to come forward with facts establishing that [Central] had actual or constructive knowledge that his self-reported timesheets did not include the time spent on meetings and classes and picking up paychecks." *Id.* at 81. While the district court stated that it read the supplemental response, it did not mention any of the evidence contained therein, and thus it did not address the deposition evidence from Curci or Forst.

Because the district court denied Central's motion to strike, the evidence in the supplemental response is part of the record on appeal. Further, neither party on appeal argues the merits of the motion to strike, and both parties discuss Curci's testimony in their briefs. We thus see no prejudice to Central from this court's consideration of that evidence as part of its de novo review.

In its brief on appeal, Central argues that Curci's testimony does not support a conclusion that McGrath, himself, complained about noncompensation

for the foremen meetings and for picking up paychecks. Appellee Br. at 8-9. We think this argument is hypertechnical and does not convey the spirit of Curci's testimony. The following is the relevant evidence:

> Q. (to Mr. Curci) Okay. During your time that you were supervising these ten foremen, was overtime compensation ever raised as an issue by any of the foremen?
>
> A. Yes.
>
> Q. Do you remember who specifically?
>
> A. There was probably quite a few. James McGrath, Mike Seabert.
>
> Q. Do you recall what Mr. Seabert's complaints were –
>
> MR. FOWLER: Object –
>
> Q. (BY MR. REESE) — specifically?
>
> MR. FOWLER: Object to form.
>
> A. I don't.
>
> Q. (BY MR. REESE). Okay. Let me ask you specifically: Do you recall any foreman, including Mr. McGrath, who complained to you about not being compensated for having to come in on Thursday afternoons and pick up paychecks?
>
> A. Repeat the question.
>
> Q. Sure. Did any foreman under your supervision or any that you're aware of at Central Masonry, whether they were under your supervision or not, ever complain about not being compensated for the time necessary to

go back to the office on Thursdays to pick up paychecks?

A. They did complain.

Q. Okay. More than one person complained?

A. Yes.

Q. And did you, in your experience at Central Masonry, ever hear any of the foremen, whether under your supervision or not, complain about not being compensated for the foremen meetings on Thursday evenings once a month?

A. Yes.

Q. More than one complaint?

A. More than one.

Q. When you heard that complaint, what did you do? Did you report it to Mr. House?

A. No.

Q. Why?

A. It's – you're arguing with somebody you'll never win.

Q. What do you mean by that?

A. It's just – it's his way. I mean, it's, you know, I don't know what to say. I mean, it's – when he pretty much says, This is the way it is, that's the way it is, and he doesn't bend very much at all.
Q. Okay. At any time, then, did he tell you that, you know, foremen meetings were a part of their job and they're not going to be compensated for them?

A. I don't remember him saying that, no.

Q. Okay. Well, when you say that, you know, you didn't want to get into an argument, I assume that at some point you must have gone to him and said, you know, The foremen are complaining about not being compensated for the meetings, and he gave you his response, and you said, I'm not going to argue with you.

That's what I assumed. Is that what happened –

A. No.

Q. – or did you ever raise –

A. I never raised the issue.

A. Okay. And why, specifically, as a vice president and as the foremen supervisor, when they complained to you about not being compensated for foremen meetings, and specifically for the record, why did you not take that complaint to Mr. House?

A. I just didn't –

MR. FOWLER: Object to form.

A. I just didn't think I could change his mind.

Q. (BY MR. REESE). Okay. Did you believe that his mind was set on the idea that foremen were not to be compensated for foremen meetings? Is that the impression you had?

A. Right.

Aplt. App. at 52-54.

In addition to this evidence, McGrath testified that the last time he reported overtime, House screamed at him and asked him whether he had given himself "a

-8-

fucking raise." Aplee. Supp. App. at 44. House then told McGrath he was not to bill more than forty hours per week. *Id.* at 42-45. After this incident, Central instituted a policy requiring approval for overtime, but McGrath never made such a request. *Id.* at 44-45. "An employer who is armed with knowledge that an employee is working overtime cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Harvill v. Westward Commc'ns*, 433 F.3d 428, 441 (5th Cir. 2005) (quotation and alteration omitted). We view this evidence as sufficient to establish a genuine issue of material fact as to Central's knowledge regarding whether McGrath was being paid for his overtime.

Andrea J. Kershner's motion to withdraw as attorney for McGrath is GRANTED. The judgment of the district court is AFFIRMED in part and REVERSED in part, and this case is remanded for further proceedings consistent with this order and judgment.

Entered for the Court


Monroe G. McKay
Circuit Judge

-9-